EVANS et al. v. McFARLAND, Collector of the
Revenue of the CITY OF WEST PLAINS, Appel-
lant.

**In Banc, February 28, 1905.**

1. **City Indebtedness: Recitals of Legality in Bonds.** Narrations
in municipal bonds reciting their legality and their issuance
in accordance with law are self-serving and add nothing to
their legality and are not a bar to an investigation of their va-
lidity.

2. ———: **Taxation in Excess of Fifty Cents.** A city of the fourth
class has the power, when the bonds have been voted by two-
thirds of the legal voters thereof, to levy and collect, in addi-
tion to the tax of fifty cents on the hundred dollars for current
expenses, etc., a tax to pay the interest and principal of bonds
issued for the erection of waterworks and an electric light plant.
(**Burgess, J.,** dissenting.)

3. ———: ———: **Statutes: Repeal by Implication.** Section 5968
(art. 5, chap. 91, R. S. 1899) authorizes a city "to borrow money
and issue bonds for the payment thereof . . . for the purpose
of erecting waterworks, electric light works . . . without in-
creasing the annual rate of taxation" . . . when "two-thirds
of the legal voters have assented thereto in accordance with ar-
ticle 13, chapter 91, Revised Statutes of 1899," and the bonds
recited that they were issued in pursuance to that article. An-
other section of the same article (sec. 6350) authorized the in-
curring of indebtedness "in excess of the annual income and
revenue of any such year, for any purpose authorized in the
charter of such city . . . or by any general law of the State,"
an election therefor and the issuance of bonds, and section 6487
in article 20, chapter 91, authorized "any city . . . to erect,
maintain and operate waterworks, and . . . electric light
plant," but neither of these sections contained the words, "With-
out increasing the annual rate of taxation." *Held, first,* that
there is no positive repugnancy between the statutes, and that
section 5968 did not by necessary implication repeal the other
sections; *second,* that the whole power of the city is not ex-
pressed in section 5968, but the other sections contain sufficient
authority to make valid the issuance of bonds for the construc-
tion of waterworks and an electric light plant; *third,* section
5968 is to be read in connection with the other sections, and
is to be taken as mere declaratory and affirmative legislation,

cumulative in character; *fourth,* the word "without," found in the phrase, "without increasing the annual rate of taxation," should be read to mean "independently of," and then the phrase would mean that any taxes rendered necessary by the bond issue should be otherwise raised than by increasing the annual rate for current municipal purposes.

4. ———: ———: **Vote on Levy.** It is not necessary, after two-thirds of the people have assented to the indebtedness and bond issue for erecting waterworks and an electric light plant, that the people vote directly on the levy itself. The tax to pay the principal and interest of the bonds, authorized by them at the time the indebtedness was authorized, may be levied without any further vote of the people.

5. ———: ———: ———: **Constitutional Provision: Self-Enforcing.** The constitutional mandate, requiring the city at the time of or before creating the debt for waterworks, etc., to "provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for payment of the principal thereof within twenty years from the time of contracting the same," is self-enforcing.

Appeal from Howell Circuit Court.—*Hon. James T. Neville,* Special Judge.

REVERSED AND REMANDED (*with directions*).

*H. D. Green* and *A. H. Livingston* for appellant; *Shope, Mathis, Zane & Weber, John C. Mathis* and *Harry P. Weber* of counsel.

(1)    It is contended that the levy made by the city authorities of twenty-five cents on the $100 valuation, for the purpose of paying the interest on such bonds, is illegal and invalid, because the rate of taxation necessary to pay such interest and the principal, when it becomes due, was not submitted to the qualified voters of the city and voted by them at the time the bonds were authorized to be issued by such vote. Just how the bonded debt is conceded to be valid, and yet the power to levy the necessary taxes to pay the interest and principal is invalid, is a proposition that we are

hardly able to comprehend. Sec. 12, art. 10, Constitution; Waterworks v. Lamar, 128 Mo. 188, 140 Mo. 145; secs. 6350, 6351, 6352, 6353, 6354, R. S. 1899. The debt is not created by the mere assent of the voters. It might be that this assent would be given, and yet the municipal authorities refuse to incur the debt. The debt is only incurred when the obligation in the shape of bonds are issued and delivered. Saleno v. Neosho, 127 Mo. 627. The proposition is also clearly settled by this court that the municipal authorities have a right to levy the tax for interest and sinking fund without any vote being taken thereon. The authority given by the voters of the municipal corporation, under the Constitution and the statutes, carries with it and vests in the municipal authorities the right and power to levy these necessary taxes. Stanberry v. Jordan, 145 Mo. 370. (2) The bonds in this case were issued under and in pursuance of articles 13 and 20, chapter 91, Revised Statutes 1889, and article 10, section 12, of the Constitution. It can not be contended that the debt was incurred under section 5968, Revised Statutes 1889. Said section provides the manner in which waterworks may be erected by the city, when it is able to pay the interest and constitute a sinking fund within the constitutional limit of fifty cents. The power to do so has ever existed under the present Constitution, and the power to reach or go above the limit of fifty cents was given in the construction of section 12, article 10 of the Constitution, in the Lamar Waterworks case.

*W. J. Orr* for respondents.

(1) The only statute in force in this State, when the bonds in question were issued, and still in force authorizing cities of the fourth class to issue bonds for the purpose of erecting waterworks and electric light plants, is section 5968, Revised Statutes 1899. This

section is a part of an act approved April 11, 1895 (Laws 1895, pp. 65-90), which repealed all prior laws relating to cities of the fourth class. Under this statute this power must be exercised, if at all, without increasing the rates of taxation. The terms and provisions of this law constituted a part of the proposition submitted to the people, and their assent to the issue of the bonds in question was in accordance with and not in violation of this law. The statutes cited by appellant do not, expressly or by implication, authorize cities to issue bonds for this specific purpose. Article 13, chapter 91, Revised Statutes 1899, relied on by appellant, simply provides a means of carrying into effect a power already granted to "cities, towns and villages," by their charters or by the "general law of the State." Article 20, chapter 91, Revised Statutes 1899, cited by appellant as such "general law of the State," does not confer on cities of the fourth class the power to issue bonds for this purpose. This article is made up of four different acts. The first section authorizes cities and towns to erect or to purchase water or light plants, but says nothing about issuing bonds. This section was passed in 1891, and contains an emergency clause, which recites that there is no law authorizing cities to "erect or purchase" such plants. Hence the act of 1899 (art. 13, ch. 91, supra), which was then in force did not do so. But the power to erect or purchase such plants does not imply a power to issue bonds, else the act of 1893 (Laws 1893, p. 60), authorizing certain cities to issue bonds for this purpose was useless. And the act of 1895 (Laws 1895, p. 81) authorizing cities of the fourth class to issue bonds for the same purpose, was useless. So we contend that while there are statutes authorizing cities to erect or purchase such plants, the only statute granting to cities of the fourth class power to issue bonds for this purpose is section 5968, supra. This being true, the litigated tax is unauthorized and illegal, as found by the

learned trial judge who presided in this case.  (2)  But
if this court should hold that the provision of section
5968, Revised Statutes 1899, that such bonds may be
issued "without increasing the rate of taxation," is
optional merely, and that such section grants the power
to issue bonds and also the power to increase the rate
of taxation, then the question arises, must such increase
of taxation be assented to by the voters at the time
such bonds are voted, or at all?  We do not see how
this court can hold the above provision to be optional
only.  But, assuming that this might be done, we insist
that this option can not be exercised by the people un-
less they are given an opportunity of assenting or not
assenting to an increase of the rate of taxation.  In
other words, if this statute permits bonds to be issued
either with or without an increase of taxation, how is
the voter to know which of these propositions he is as-
senting to unless the ordinance or notice calling the
election indicates whether an increase is or is not in-
tended?  Under the old statute (sec. 1589, R. S. 1889),
which permitted cities of the fourth class to contract
with individuals or companies for water and lights,
and under which contracts were made in Lamar,
Neosho, Aurora and Boonville, the question of increas-
ing the rate of taxation was submitted to the voters.
If the present statute did not authorize the issue of
bonds "without increasing the rate of taxation," it
might be argued with more plausibility that by voting
the bonds the voters assent to such increase.  But how
can it be said that the voters impliedly assent to an
increase of taxes when the statute which grants the
power to issue bonds for this purpose expressly pro-
vides that this may (shall) be done without such in-
crease?

LAMM, J.—This is an agreed case on the follow-
ing submission:
"It is hereby stipulated and agreed that the mat-

ter of difference between the plaintiffs and defendant be submitted without the formality of a civil action, under the provisions of section 793, Revised Statutes 1899, as follows:

"1.  It is agreed that the plaintiffs are resident taxpaying citizens of the city of West Plains, Missouri.

"2.  That said city is a city of the fourth class, organized under the general laws for the organization of cities and towns.

"3.  That the defendant is the duly qualified and acting collector of the revenue of said city.

"4.  That the board of aldermen of said city for the year 1900, and for several years prior thereto, levied, for city purposes, fifty cents on the $100 valuation, upon all property in said city, including the property of these plaintiffs, which said levy and tax of fifty cents on the $100 valuation plaintiffs have fully paid off and discharged.

"5.  That in addition to the said levy of fifty cents on the $100 valuation for the year 1900, the board of aldermen on the fifth day of November, 1900, levied 25 cents on the $100 valuation on all taxable property of said city, including the real and personal property of these plaintiffs.  That said 25 cents on the $100 valuation was levied for the purpose of paying the interest on certain bonded indebtedness voted and created by said city in the manner hereinafter set forth.

"6.  It is agreed that said bonds were voted and issued in the manner following:

" (a)  That the following ordinance was passed by the board on the date stated:

### " 'ORDINANCE.

" 'Be it ordained by the Board of Aldermen of the city of West Plains, as follows:

" 'That a proposition to incur indebtedness and issue bonds therefor by said city of West Plains to the amount of twenty-seven thousand five hundred dollars,

for the purpose of erecting waterworks and an electric light plant in said city, be submitted to the qualified voters of said city; that an election be held at the usual voting places in each ward of said city on the twenty-eighth day of July, 1900, to vote on said proposition; that notice of such election be given as required by section 6351, Revised Statutes 1899, and that tickets or ballots be prepared and printed to be used at such election, which shall be in the following form:

" 'For incurring debt—Yes.

" 'For incurring debt—No.

" 'The former of which shall be taken as a vote assenting to the creation of such debt, and the latter as dissenting therefrom.

" 'Said ordinance shall take effect and be in force from and after its passage and approval.

" 'Passed and approved this second day of July, 1900.'

" (Signatures omitted.)

" (b)   The notice of election was as follows:

" 'NOTICE OF SPECIAL ELECTION.

" 'Notice is hereby given to the legal voters of the city of West Plains that in pursuance of an ordinance passed and adopted by the board of aldermen of said city, on the second day of July, 1900, an election will be held on the twenty-eighth day of July, 1900, at the usual voting places in each ward in said city, to vote upon a proposition to incur an indebtedness of $27,500 and issue bonds therefor, for the purpose of building and erecting waterworks and electric light plant in said city, to be owned and operated by the city. Ballot: The ballot for such election will be prepared as follows: "For incurring debt—Yes. For incurring debt—No." The former of which shall be taken as a vote assenting to incurring of such debt, and the latter as dissenting therefrom.'

"(Signatures omitted.)

"(c)  Afterwards the following proceedings were had:

" 'City Hall, West Plains, Missouri, August 6, 100.  City council met in regular session and were present, Mayor H. G. Doty, Aldermen Geo. S. Hoey, W. S. Shadburne, L. W. Hunt, C. P. Harper and Al J. Campbell, when and where the following business was had and done and made a record of, to-wit: an ordinance concerning the special election held Saturday, July 28, 1900.  Whereas, on the second day of July, 1900, the board of aldermen passed an ordinance in words and figures as follows:  (Here follows a copy of the ordinance, notice and ballot, as already set out); and whereas, on the twenty-eighth day of July, 1900, pursuant to said ordinance and notice, an election was held at the usual voting places in the city of West Plains, for the purpose of testing the sense of the voters upon the proposition as set forth in said notice and ordinance, to-wit, whether the city of West Plains should incur an indebtedness of $27,500, and issue bonds therefor, as provided in article 13, chapter 91, Revised Statutes of Missouri, 1899; and whereas, upon a canvass of the certified returns of the judges of said election, submitted to the board at its regular meeting on Monday, August 6, 1900, it appears that the number of votes cast for incurring such indebtedness was 438, and the number of votes cast against incurring such indebtedness was 57; therefore be it ordained by the board of aldermen of the city of West Plains as follows:

## " 'ORDINANCE.

" 'Section 1.  That it is hereby declared that the called election for the purpose authorized has been duly held in accordance with the provision of article 13, chapter 91, Revised Statutes 1899, and two-thirds of the legal voters voting at said election voted for the

proposition of incurring the indebtedness and issuing bonds to the amount of $27,500, for the purpose of erecting a waterworks and electric light plant in said city, to be owned and operated by said city, to-wit: four hundred and thirty-eight were cast for incurring such indebtedness, and fifty-seven were cast against incurring such indebtedness, the number of votes cast for incurring such indebtedness also being two-thirds of the qualified voters of said city. On motion the rules were suspended and the above-named ordinance was passed at first reading. On motion the rules were suspended and the above-named ordinance was passed at the second reading. On motion the rules were suspended and the above-named ordinance was passed at the third reading. On motion the above-named ordinance is to be in effect and full force on and after its passage and approval. Passed and approved this the sixth day of August, 1900. H. G. Doty, Mayor; George S. Hoey, President Board of Aldermen; Attest: G. H. Cobb, clerk. There being no further business on motion the council adjourned until next regular meeting. H. G. Doty, Mayor; Geo. S. Hoey, President Board of Aldermen; Attest: G. H. Cobb, City Clerk.

" 'City Hall, West Plains, Missouri, September 17, 1900.

" 'Council met in special session on call of Mayor. Present H. G. Doty, Mayor; Geo. S. Hoey, W. S. Shadburne, L. W. Hunt, A. J. Campbell, Aldermen. Motion made and carried that the mayor be authorized to attend to advertising for bids on bonds. Bonds to run for twenty years, and bear 5 per cent interest, and October 1, 1900, was the day set for selling bonds. There being no further business council adjourned. H. G. Doty, Mayor; Geo. S. Hoey, acting clerk.

" 'City Hall, West Plains, Missouri, October 1st, 1900. Council met in call session for the purpose of receiving bids on bonds, to be sold this date. Present, H. G. Doty, Mayor; Aldermen Geo. S. Hoey, W. S.

Shadburne, L. W. Hunt, C. P. Harper, A. J. Campbell and J. H. Burnsworth. N. W. Harris & Company, of Chicago, Ill., made a bid of $1,905 premium on the $27,500 waterworks and electric light bonds; this being the highest bid, motion was made and carried that N. W. Harris & Co. be awarded the $27,500 waterworks and electric light bonds as per contract entered into between N. W. Harris & Co. and the city of West Plains; there being no further business council adjourned. H. G. Doty, Mayor; Attest: G. H. Cobb, City Clerk.'

"(d)  Afterwards the board passed the following ordinance:

## "'ORDINANCE.

" 'An ordinance repealing ordinance No. 244 and providing for and levying an additional annual tax for the year 1900, for the payment of the interest on the waterworks and electric light bonds. Whereas a change has been decided upon and made in the manner and time of providing for a sinking fund for the payment of the principal on the waterworks and electric light bonds, and whereas a certain ordinance No. 244, passed and approved by the board of aldermen at its regular meeting on October 1, 1900, does not meet with the requirements of said change, as set forth in ordinance No. 245, passed and approved by said board at its regular meeting on November 5, 1900. *Therefore, be it ordained by the board of aldermen of the city of West Plains, Missouri, as follows*:

" 'Sec. 1.   That ordinance No. 244, found on page 31, of ordinance book 'A,' and providing for and levying an annual tax for the purpose of paying the interest and providing for a sinking fund for the payment of the principal on the waterworks and electric light bonds is hereby repealed.

" 'Sec. 2.   That in accordance with ordinance No.

245, passed and approved by said board at its regular meeting on November 5, 1900, and concerning and relating to the issuance of $27,500 waterworks and electric light bonds by the city of West Plains, Missouri, and providing for a levy and collection of an annual tax to pay the principal and interest thereof, there is hereby levied on all taxable property, both real and personal, within the corporate limits of the city of West Plains, Missouri, for the purpose of raising revenue for the paying of $1,375, the same being the amount of one year's interest on said waterworks and electric light bonds, an additional annual tax of 25 cents on the $100 valuation for the year 1900.

" 'Sec. 3. Said tax to be in addition to the regular tax levied and collected for the purpose of raising revenue for the general expenses of the city.

" 'Sec. 4. That this levy shall take effect at once, and the city collector is hereby instructed and empowered to collect said additional taxes for the year 1900, in the same manner and with the same effect as said regular taxes are collected.

" 'Sec. 5. That the city clerk is hereby instructed to make the proper change and correction of the levy on the city tax books, in compliance with this ordinance.

" 'Sec. 6. That all ordinances or parts of ordinances in conflict with this ordinance are hereby repealed.

" 'Sec. 7. That this ordinance shall be in full force and effect on and after its passage. Passed and approved this fifth day of November, 1900.'

" (Signatures omitted.)

"(e) Afterwards the said board passed the following ordinance:

" 'An ordinance relating to the issuance of $27,500 waterworks and electric light bonds by the city of West Plains, Missouri, and providing for the levy and collec-

tion of an annual tax to pay the principal and interest thereof. Whereas, at a special election, duly called and held in the city of West Plains, on the twenty-eighth day of July, 1900, a proposition that the city incur an indebtedness of twenty-seven thousand and five hundred dollars, and issue bonds therefor, for the purpose of building and erecting waterworks and electric light plant in said city, was duly submitted to the legal and qualified voters thereof, and carried by the affirmative votes of more than two-thirds of the qualified voters of said city; and whereas, the result of said election was duly certified to the council of said city, and such result by proper ordinance declared, and said council deeming it for the best interest to do so, decided to sell twenty-year five per cent bonds of said city, dated October 1, 1900, which said bonds, upon due advertisement, were, at a call meeting of the council on October 1, 1900, sold and awarded to the firm of N. W. Harris & Co., of Chicago, Ill., at a price in excess of their par value, and accrued interest thereon, but are as yet not issued nor delivered. Now, therefore, be it ordained by the board of aldermen of the city of West Plains as follows: .

" 'Section 1. That there shall be, and there is hereby ordered and directed to be, issued the negotiable coupon bonds of the city of West Plains, to the aggregate amount of twenty-seven thousand and five hundred dollars, for the purpose of supplying means with which to construct and equip waterworks and electric light plant in and for said city.

" 'Section 2. That said bonds hereby authorized and directed to be issued shall be fifty-five in number, numbered consecutively from one upwards of the denomination of five hundred dollars each; shall be designated waterworks and electric light bonds; shall be dated October 1, 1900; shall become due and payable on the thirtieth day of September, 1920; shall be payable to bearer, and shall bear interest from and after

their date at the rate of five per centum per annum, payable semiannually on the first days of April and October in each year.

" 'Section 3. That there shall be attached to each of said bonds coupons evidencing the several installments of interest due semiannually thereon from the date of said bonds to the maturity thereof, and both principal and interest of said bonds shall be payable in lawful money of the United States of America, at the banking house of N. W. Harris & Co., in the city of Chicago and State of Illinois, and each of said bonds and coupons shall be respectively in substantially the following form, to-wit:

" 'United States of America, State of Missouri, city of West Plains, waterworks and electric light bond No. ————, $500.

" 'Know all men by these presents, that the city of West Plains, in the county of Howell, in the State of Missouri, ackowledges itself to owe, and for value received hereby promises to pay to bearer the sum of five hundred dollars, lawful money of the United States of America, on September 30, 1920, together with interest on said sum from the date hereof until paid at the rate of five per centum per annum, payable semiannually in like lawful money on the first days of April and October in each year, upon the presentation and surrender of the interest coupons hereto attached, as they severally become due; both principal and interest payable at the banking house of N. W. Harris & Co., in the city of Chicago, Ill.; and for the prompt payment of this bond, with interest as aforesaid at maturity, the full faith, credit and resources of said city of West Plains are hereby irrevocably pledged.

" 'This bond is issued by said city of West Plains for the purpose of constructing and equipping waterworks and electric light plant in and for said city, and is issued in accordance with more than a two-thirds majority vote of the legal voters of said city, voting at

an election duly called and held for that purpose on the twenty-eighth day of July, 1900, and is issued pursuant to and in full compliance with the provisions of article 13, of chapter 91 of the Revised Statutes of the State of Missouri, 1899, and in accordance with the provisions of an ordinance of said city duly passed and adopted since the date of said election.

" 'And it is hereby certified and recited that all acts, conditions and things required by the Constitution and laws of the State of Missouri to be done precedent to and in the issuance of this bond have been properly done, happened and been performed in regular and due form and time, as required by law; and that the total indebtedness of said city of West Plains, including this bond, does not exceed the constitutional or statutory limitation.

" 'In testimony whereof the said city of West Plains has caused its corporate seal to be hereto affixed, and this bond and the coupons hereto attached, to be signed by its mayor, and attested by its city clerk, this first day of October, 1900.      (Signatures omitted.)

" 'FORM OF COUPON.

" 'No.———      West Plains, Mo.      $12.50.

" 'The city of West Plains, in the county of Howell and State of Missouri, will pay to bearer twelve dollars and fifty cents, lawful money of the United States of America, on ———, 19——, at the banking house of N. W. Harris & Company, in the city of Chicago, Illinois, for semiannual interest due that day on its Waterworks and Electric Light Bond, dated October 1st, 1900, No. ———.      (Signatures omitted.)

" 'Section 4.   That the mayor and city clerk of said city of West Plains are hereby authorized and directed to cause to be prepared in such form as will comply with the provisions hereof the bonds and coupons hereinbefore described; and when so prepared, said bonds shall be signed by said mayor, attested by said

city clerk, and the corporate seal of said city thereto affixed; and each of said coupons shall be signed by said officers.

" 'Section 5. That when said bonds and coupons have been prepared and executed as aforesaid they shall be registered by the State Auditor of the State of Missouri, as provided by law, and shall then be delivered, in accordance with the terms of purchase heretofore duly agreed upon, to the said firm of N. W. Harris & Company; and the proceeds arising from the sale of said bonds shall be used solely for the purpose of constructing and equipping waterworks and an electric light plant in and for said city.

" 'Section 6. That in order to pay the interest on said bonds when and as the same matures, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the date of said bonds, there shall be, and there is, hereby levied, beginning with the year 1900, and continuing annually thereafter until said bonds are paid, a direct annual tax in addition to all other taxes, on all the taxable property in said city of West Plains, sufficient in amount to produce annually the sum of thirteen hundred and seventy-five dollars for the payment of the annual interest on said bonds; and, beginning with the year 1910 and continuing annually thereafter until all of said bonds the paid, there shall be, and there is, hereby levied on all the taxable property within said city of West Plains a direct annual tax, in addition to all other taxes, sufficient in amount to produce annually the sum of two thousand, seven hundred and fifty dollars for the payment, at maturity, of the principal of said bonds; which said taxes for principal and interest aforesaid shall be collected at the same time and in the same manner as other city taxes; and when so collected shall be kept as a separate fund, irrevocably pledged to the prompt and punctual payment of the principal and interest of said bonds; said tax shall be

known "as the waterworks and electric light bond tax," and said fund "as the waterworks and electric light bond fund."

"'Section 7. That all ordinances or parts of ordinances in conflict with the provisions of this ordinance be, and the same are, hereby repealed.

"'Section 8. That this ordinance shall be in full force and effect from and after its passage, approval and publication.

"'Passed November 5, 1900.

"'Approved November 5, 1900.

"'Published November 7, 1900. (Signatures omitted.)'

"7. Plaintiffs claim that the levy of the additional 25 cents on the $100 valuation is invalid and not authorized under the Constitution, the statutes or the election voting said bonds.

"Defendant claims that the said levy is valid and will seize and sell the property of plaintiffs unless restrained.

"8. It is further agreed that no other election than the one above referred to was held in said city authorizing the issue of said bonds or the levy of any tax to pay them or the interest thereon.

"9. On the above facts plaintiffs pray that the said levy of 25 cents on the $100 valuation be set aside and held for naught, and that the defendant be restrained from collecting the same. And pending this submission that he be temporarily restrained from levying upon or selling plaintiffs' property to satisfy said tax.

"10. On the above facts, defendant asks that said tax be declared legal." (Signatures and statutory affidavit omitted).

One of the plaintiffs, the Hon. W. N. Evans, being judge of the circuit court wherein the cause was instituted, a stipulation was made and filed selecting

Judge Neville of the Greene County Circuit Court to try the cause, and an order was entered to that effect.

On hearing had before him, the finding was for plaintiffs, the additional levy of 25 cents on the $100 of valuation was decreed illegal, its collection was perpetually enjoined, and from that decree defendant appealed.

We are beholden to the learned counsel on both sides for a concise formulation and narrowing of the vital issues, which, in a nutshell, may be stated thus: it is affirmed on one side, and denied on the other, that in the year 1900 the only statutory warrant of authority for the issue of bonds by cities of the fourth class to establish water and electric lighting plants, is found in section 5968, Revised Statutes 1899; it is affirmed on one side, and denied on the other, that the phrase in said section 5968, viz., ''Without increasing the annual rate of taxation,'' *ex vi termini,* strikes to the ground as void all taxes levied to pay current interest on such bonds, when, as here, such levy is additional to a fifty cent levy on the $100 valuation; and it is affirmed on one side, and denied on the other, that such levy (conceding, *arguendo,* it could be validly made at all) could be only made by an express submission to the electors of West Plains at an election duly called and a two-thirds vote resulting in a direct grant of authority to levy the increased tax.

Although the agreed case evidenced by the stipulation is silent thereon, yet the cause is submitted to us on briefs which assume, *passim,* that the identical bonds named in the ordinances in the amount called for, $27,500, were duly signed, sealed, registered and executed by delivery to N. W. Harris & Co.; that they paid in their bid of par plus the premium, $1,905; that the city established a water and light plant with the proceeds; and that such bonds did not create a present

indebtedness in excess of the constitutional limit of five per cent of the total assessed valuation.

Nor is the validity of the bonds questioned by repondents. On that head appellant contends the validity of the bonds stands directly conceded by the agreed case. Respondents present their side on the theory that the validity of the bonds is not an issue. Their contention is that the interest can be paid, if at all, by what is left over and above municipal purposes out of a fifty-cent levy on the $100 of valuation, and not otherwise.

Appellant's counsel lay down a subsidiary proposition as of value in determining this case, to-wit, that the bonds on their face avouch their own validity and assert a birth free from any statutory or constitutional *bar sinister*.

The bone of contention being the validity of the levy of the additional 25 cents on the $100 of valuation to pay current interest on the bonds aforesaid, did the court below arrive at a correct answer to the legal problem presented by the agreed case? In our opinion it did not, and hence the decree ought not to stand, and this for the reasons following:

## I.

Whatever the doctrine in other jurisdictions, in this State the rule is that mere self-serving narrations in municipal bonds, attesting their own validity or reciting their issuance in compliance with conditions precedent created by law, estop no one and bar no road to the investigation of their legality. [Thornburg v. School Dist., 175 Mo. l. c. 23.] So that the subsidiary proposition advanced by appellant, to the effect that significance be given to such narrations in the bonds, is a false light which, followed, leads into a judicial quagmire.

## II.

First, is section 5968 the exclusive source of power for cities of the fourth class in issuing bonds to establish water and light plants? And, second, if it be held to be the exclusive source of such power, does such holding necessarily destroy the tax in question?

Section 5968 is part of article 5, chapter 91, Revised Statutes 1899—an article which is commonly, but rather loosely, spoken of as the charter of cities of the fourth class, and reads:

"Section 5968. The board of aldermen shall have power to borrow money and issue bonds for the payment thereof, within the limits prescribed by the Constitution, for the purpose of erecting waterworks, electric light works, a city hall, and other public buildings and improvements, and for furnishing the same, *without increasing the annual rate of taxation.* But such bonds shall not be issued until two-thirds of the legal voters of such city have assented thereto in accordance with article 13, chapter 91, Revised Statutes 1899."

Respondents contend not only, as said, that cities of the fourth class must look alone to said section for authority to issue bonds to build and equip water and light plants, but that with such legislative grant of power went the inflexible limitation that a levy for current interest on such bond issue must not be in excess of the fifty-cent levy on the $100 of valuation permitted by section 11, article 10, of the State Constitution.

Respondents further contend that in construing the phrase in said section, "Without increasing the annual rate of taxation," there should be read into said phrase, before the word "without," the other words, "provided you can do so," so that the whole phrase, as judicially interpreted, may be equivalent to, "Pro-

vided you can do so without increasing the annual rate of taxation.''

Appellant contends, *e converso,* that section 5968 is not the only source of power for the issue of such bonds; that the root of such power is found in section 12, article 10, of the Constitution, and that enabling legislation is found in sections 5966 and 5967 of said article 5, and in articles 13 and 20 (sections 6350-1-2-3 and 6487), chapter 91, Revised Statutes 1899; that all these sections must be construed *in pari materia* and that section 5968 repeals none of the others.

Appellant further contends that even if section 5968 repeals the other sections and though it be construed the only source of bond-issuing power, still the tax in question is not obnoxious to its provisions, because in the phrase, "without increasing the annual rate of taxation," the word "without" should not be judicially interpreted as meaning "unless" or "except," but should be judicially interpreted as meaning "independently of," "excluding," "with the exclusion of," "outside of," "unconnected with," or be given some kindred meaning, so that the whole phrase be determined as equivalent to, "Independently of increasing the annual rate of taxation," or something of like significance.

It has not been the policy of our Legislature to pour into one receptacle all the charter powers of cities of the fourth class. Powers given jointly with other cities and towns have been grouped elsewhere. Thus in Revised Statutes 1889 will be found charter powers of cities of the fourth class, not only in article 5, chapter 30, but also in article 1, chapter 31, and in article 2 of said chapter. In article 2 of said chapter 31, will be found a scheme for incurring indebtedness in excess of the annual income and revenue of any such year, an election therefor and an issue of bonds under constitutional restrictions (sections 1947-8-9-50-51), and this scheme has been preserved and carried forward as liv-

ing law in the revision of 1899, not in article 5 of chapter 91, but in article 13 of chapter 91. So, too, in article 20 of chapter 91, Revised Statutes 1899, treating of waterworks and electric light plants, there is preserved another statute enacted in 1891 (Laws of 1891, p. 67) as amended in 1897 (Laws of 1897, p. 56), which reads thus:

"Section 6487. . . . The city council of any city, town or village in this State shall have the power to erect, maintain and operate waterworks, or to acquire waterworks by purchase, and to operate and maintain the same, and to supply the inhabitants thereof with water; to erect, maintain and operate gas and power plants, electric light plants, or any other kind of plant or device for lighting purposes, or to acquire and own the same by purchase, and to maintain and operate such plants, and to supply the inhabitants of such cities, towns and villages with light and power therefrom."

So, too, preceding section 5968, in sections 5966-7 (all enacted in 1895) the legislative mind recurs to the subject of water and light and grants power to own and maintain them.

It will be seen that the bonds narrate they were issued under the scheme outlined in article 13, chapter 91, Revised Statutes 1899, and the question arises, did section 5968 repeal or limit the other statutory provisions, including article 13, chapter 91, so far as they relate to cities of the fourth class? We think not. Repeals are not favored by implication. [Manker v. Faulhaber, 94 Mo. 430; State ex rel. v. Walbridge, 119 Mo. 383.] In the latter case this court quoted with approval a scholarly work, Anderson's Law Dictionary, p. 879, as laying down the right rule, thus: "A repeal by implication must be by necessary implication. It is not sufficient to establish that the subsequent law or laws cover some, or even all, of the cases provided for by it; for they may be merely affirmative or cumulative,

or auxiliary. But there must be a positive repugnancy between the provisions of the new law and those of the old; and, even then, the old law is repealed by implication only *pro tanto* to the extent of the repugnancy."

It is apposite to the investigation to note that the original act preserved in article 5, chapter 91, Revised Statutes 1899, in terms repeals article 5, chapter 30, Revised Statutes 1889 (See laws of 1895, p. 65), and does not purport to touch article 2, chapter 31, Revised Statutes 1889, or affect section 6487, supra, all of which latter, as said, are preserved in article 13 and article 20 of chapter 91, Revised Statutes 1899, as live laws.

It may be justly said that there is too much law on the subject of bond issues to establish water and light plants of cities of the fourth class; that there is an obscurity arising from the richness of mere profusion, which a scientific revision of the statutes might well remedy, but this is not a judicial province. Section 5968 includes another matter for which bonds may issue, viz., "a city hall, and other public buildings and improvements," and that salt may justify its enactment. Be that as it may, section 6350, Revised Statutes 1899 (art. 13) provides for incurring indebtedness "in excess of the annual income and revenue for any such year, for any purpose authorized in the *charter* of such city, town or village, *or by any general law of the State,* upon the assent of two-thirds of the legal voters of such city, town or village voting at an election held for that purpose." Now, there is, and was then, a general law of the State authorizing cities of the fourth class to establish and equip water and light plants (section 6487, supra). It follows, we think, that the bonds could properly be issued under article 13, chapter 91, Revised Statutes 1899, and that section 5968, supra, is not the sole source of power for such bond issue, but may be taken as mere declaratory and affirmative legislation, cumulative in character. [Hand v. Fellows, 148 Pa. St. 456; Johnson, Petitioner, v. Southern Pacific

Company, 25 Sup. Ct. Rep. 158; State ex rel. v. Walbridge, supra.]

But if we felt constrained to hold that section 5968 was the plenary source of bond-issuing power, we could not accept respondents' interpretation of the phrase, "without increasing the annual rate of taxation," found therein. A proper gloss of the word "without" does not require it to be read as meaning "unless" or "except." Good usuage permits its meaning to be, when employed in a correct prepositional sense, "independently of," "otherwise than with." [Webster's International Dictionary (q. v.); Anderson's Law Dictionary, p. 1118 (q. v.).] So read, the phrase would stand: "Independently of increasing the annual rate of taxation." In other words, the annual rate of taxation was to be left to be used for every-day municipal purposes, and any rate of taxation rendered necessary by the bond issue should be otherwise than by increasing such annual rate which, by the Constitution (sec. 11, art. 10), is devoted to the municipal life proper.

In Lamar Water & Electric Light Co. v. City of Lamar, 128 Mo. 188, this court, brushing away all contrary expositions, held in effect that section 11, article 10 of the Constitution, contemplated an annual rate of taxation for municipal purposes (to be levied without a vote) of 50 cents on the $100 of valuation, to be devoted, under the cash system of the Constitution, to affording the municipality a means of subsistence, and that the tax contemplated by section 12 of article 10 of the Constitution is not a fixed charge on the revenue derived by said fifty-cent levy, but is additional thereto. Sections 11 and 12 of article 10 of the Constitution (q. v.) were construed and harmonized by that decision In Banc, and the doctrine there announced has been followed and remains as establishing a working theory of the Constitution, and as building the credit of our municipalities on a rock, and not on "shifting sand."

Is it likely that when our municipalities, as shown by the history of the times, were demanding the right to own their public utilities, the Legislature, in response to that persuasive demand, would pass a law giving them the right, but *only at the expense of the revenue needed for police, fire, street, judicial and all the other purposes of their existence?* That would be, indeed, asking for bread and getting a stone. We think the Legislature had no such end in view in enacting section 5968, and that it would be violative of recognized canons of construction to so hold. The bowels of that section related to a *modus operandi* for carrying out the establishment of water and light plants without impairing the other functions of municipal government, and, as Lord COKE said, "that is a viperous exposition which corrodes the bowels of the text." It is not necessary to put such construction on section 5968, and we decline to do so.

We hold the levy of a tax of 25 cents on the $100 of valuation to pay current interest on the bonds in question, in addition to the 50 cents on the $100 of valuation, levied by West Plains and paid by respondents, is neither illegal nor in contravention of section 5968, supra.

### III.

There remains to be considered the proposition advanced by respondents to the effect that the additional levy of 25 cents on the $100 of valuation could not be made without a direct vote of the people on the levy itself.

The vice of that proposition is, that it is not so written in the law. The people vote the *indebtedness* and two-thirds of the qualified voters must assent thereto. [Sec. 12, art. 10, Constitution; secs. 6350-1-2-3, art. 13, chap. 91, R. S. 1899.] Having once legally voted the indebtedness, as here, the constitutional mandate, requiring the city at the time of or before creat-

ing the debt, to "provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for payment of the principal thereof within twenty years from the time of contracting the same" (sec. 12, supra), must be read into the transaction. [State ex rel. City of Columbia v. Allen, 183 Mo. 283; Benton v. Scott, 168 Mo. 378.] No vote on the levy of a tax to pay interest was necessary.

Section 12 of article 10 of the Constitution, in so far as it requires a levy to pay interest and create a sinking fund, may be deemed self-enforcing (Benton v. Scott, 168 Mo. l. c. 394), and this is in accordance with persuasive authority (City of East St. Louis v. People ex rel., 124 Ill. 655), and is the doctrine of the Supreme Court of the United States (East St. Louis v. Amy, 120 U. S. 600).

Interest followed, as night follows day, when the bonds were voted by the people and duly issued. The duty to pay it, when once the people vote an indebtedness, is not left to the whimsical vicissitudes of municipal politics. The restraining and guiding provisions of the Constitution in that behalf are not mere advisory or moral admonitions, but they arise to the dignity of imperious mandates to be obeyed, *will ye, nill ye.*

In this case provision was made in the ordinances for the payment of interest and a tax levy followed which was well enough.

The decree was for the wrong party and the case is reversed and remanded with directions to the court below to enter a decree sustaining the tax and dissolving the injunction. *Valliant, Marshall* and *Gantt, JJ.,* and *Brace, C. J.,* concur; *Fox, J.,* concurs in the result; *Burgess, J.,* dissents.