STATE OF MISSOURI at the relation of CONSOLIDATED SCHOOL DISTRICT No. 8 OF PEMISCOT COUNTY, and FRED KELLEY, W. E. WRIGHT, W. E. TAYLOR, F. B. HOLLOMON, J. W. GERMAN and T. W. WHITFIELD, constituting the Board of Education of said CONSOLIDATED SCHOOL DISTRICT No. 8, and FRANK HARPER, Treasurer of said District, Relators, v. FORREST SMITH, State Auditor.—121 S. W. (2d) 160.

Court en Banc, November 16, 1938.

*Ward & Reeves* for relators.

*Roy McKittrick,* Attorney General, and *Covell R. Hewitt,* Assistant Attorney General, for respondent.

*Blanton & Montgomery* and *Chas. Claflin Allen, Jr., amici curiae.*

DOUGLAS, J.—This is an original proceeding in mandamus for a writ to direct the State Auditor, the respondent, to register as re-

quired by law an issue of refunding bonds in the amount of $40,300 issued by the Consolidated School District No. 8 of Pemiscot County, Missouri, which were presented to him for registration, but which he has refused to register.

· The relator Consolidated School District was formed in 1926 under Article IV, Chapter 57 of our statutes by the consolidation of common school districts Nos. 28, 33 and 34 and the town or village school district of Steele, Missouri, No. 32. The latter district is included in references hereinafter made to "common" school districts. Thereafter common school district No. 26 and later school district No. 35 were annexed and consolidated so that the consolidated district as it now stands embraces the former common school districts No. 26, 28, 32, 33, 34, and 35. These districts, with the exception of No. 28, which had no debt at the time of consolidation or annexation, were separately indebted in varying amounts for money borrowed as evidenced by outstanding bonds. There remains unpaid of these various bond issues the following amounts: No. 26, $7,300; No. 28, no debt; No. 32, $5,500; No. 33, $6,300; No. 34, $6,500; No. 35, $4,000 or a total of $29,600. These bonds had been issued with the consent of two-thirds of the voters of the individual districts in accordance with the constitutional provision for incurring debts.

It is admitted that there was no irregularity of any kind in incurring the various debts by the component districts and at the time of the consolidation and the subsequent annexations they were valid, outstanding debts of such districts; that the consolidated district was formed according to law and that the proceedings for the issuance of the refunding bonds here involved were regular and in proper form.

In addition, the consolidated school district is also indebted for its refunding bonds in the sum of $10,700, heretofore issued and exchanged, to retire and pay off a like amount of the outstanding bonded indebtedness of said component districts. These bonds were issued from time to time by the consolidated district to refund maturing · bonds of the various common school districts previously issued together with the above issues with the consent of the voters of the districts. As they were issued, the refunding bonds were registered in the office of the State Auditor. At the time of the proceedings, wherein the consolidated district issued the bonds now offered for registration, the consolidated district was in default for non-payment of bonds which had matured in the amount of $12,000. This new refunding bond issue is for the purpose of paying off or delivering refunding bonds in exchange for all said bonds now outstanding in the aggregate amount of $40,300 or, to quote the resolution of the school board of relator· consolidated district providing for the issuance of said bonds: "for the purpose of providing funds with which to take up and redeem the aforementioned and described outstanding

bonds aggregating $40,300, or to issue refunding bonds to be delivered in exchange for said outstanding bonds." These refunding bonds bear a lower rate of interest than the bonds to be funded and mature over a period of twenty years. Upon the issuance of these refunding bonds the consolidated district provided for the levy of a tax for the payment of interest and to provide a sinking fund as required by law.

In each component school district there was a schoolhouse, furnishings and other equipment, all of which were turned over to the consolidated school district, were received by it and are now in its possession, and the consolidated district has assumed the entire indebtedness of the component districts.

█ Respondent has waived the issuance of an alternative writ of mandamus and has accepted relator's petition as such writ, to which he has filed his demurrer. The questions involved therefore, are the ones of law only. [State ex rel. Muns v. Hackmann, 283 Mo. 469, 223 S. W. 575; State ex rel. City of Jefferson v. Hackmann, 287 Mo. 156, 229 S. W. 1082.]

█ One of the grounds on which the State Auditor has refused to register these bonds is that the consolidated school district did not, by the consolidation, legally assume and become liable to pay the then-existing bonded indebtedness of the component common school districts for the reason that Section 9356, Revised Statutes 1929, providing for the assumption of such indebtedness by the consolidated district, is unconstitutional and void and violates Section 12 of Article X of the Constitution of Missouri, which prohibits a school district from incurring an indebtedness except with the consent of two-thirds of the voters of the district. Section 9356 reads in part as follows: "Whenever any consolidated (school) district is organized under the provisions of this article . . . all the property, money on hand, books and papers of the school districts whose schoolhouse sites are included within said consolidated district shall by the officers of aforesaid districts be turned over to the board of directors of the consolidated district, *and also all bonds outstanding against the aforesaid districts shall become debts against the consolidated district.* . . ." (Italics ours.)

It has long been the rule in this State, and generally throughout the country, that the power of the Legislature in the creation of public corporations (which term includes school districts) is absolute except where limited by the Constitution. The Legislature may also change, divide, consolidate and abolish them as the public welfare demands. [Harris v. Wm. R. Compton Bond & Mortgage Co., 244 Mo. 664, 149 S. W. 603; State ex rel. School District No. 1, etc., v. Andrae, 216 Mo. 617, 116 S. W. 561; State ex inf. Caranhan, etc., v. Jones et al., 266 Mo. 191, 181 S. W. 50; State ex rel. Richart v. Stouffer

(Mo.), 197 S. W. 248; School District of Oakland v. School District of Joplin, 340 Mo. 779, 102 S. W. (2d) 909.]

It has also been held to be the general rule in this State that in the absence of constitutional or statutory provisions to the contrary where one corporation goes entirely out of existence by being annexed to or merged in another corporation, then the subsisting corporation will be entitled to all the property and will be answerable for all the liabilities. When the benefits are taken, then the burdens are assumed. This general rule was applied to school districts in the case of Thompson v. Abbott, 61 Mo. 176, which case was cited with approval in Mt. Pleasant v. Beckwith, 100 U. S. 514, where it is stated that as extinguished municipal corporations have no power to levy taxes to pay debts, the town to which the territory and property of the annuled municipality was annexed should become liable for its outstanding indebtedness. The rule has been repeatedly approved in Hughes v. School District, 72 Mo. 643; Wilson v. Drainage District, 257 Mo. 266, 165 S. W. 734; Id., 237 Mo. 39, 139 S. W. 136; Abler v. School District, 141 Mo. App. 189, 124 S. W. 564; Gray v. School District, 224 Mo. App. 905, 28 S. W. (2d) 683; Boswell v. Consolidated School District (Mo. App.), 10 S. W. (2d) 665; 43 C. J., Municipal Corporations, p. 143, secs. 122 and 123; 19 R. C. L. 732.

█ In the consolidation of school districts, the Legislature has specifically provided as pointed out above in Section 9356 that whenever any consolidated school district is organized, it shall assume the debts of the component school districts. In his contention that this section is unconstitutional respondent asserts that it violates Section 12 of Article X of the Missouri Constitution, which requires the assent of two-thirds of the voters before a school district may become indebted beyond its current revenues. The constitutional provision reads in part: "No . . . school district . . . shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the consent of two-thirds of the voters thereof. . . ."

Respondent argues that relator school district has "become indebted" in violation of the provision. He particularly stresses the fact that common school district No. 28, when it was absorbed into the consolidated school district, was free of debt and that therefore when the combined debts of the other common school districts were assumed by the consolidated district the taxpayers and the property included in District No. 28, contrary to the constitutional provision, became charged with an indebtedness. The same argument might as well have been advanced by respondent in favor of all the taxpayers of all the other component districts, assuming that they were indebted in the same proportions as they are now except those of No.

26, whose debt is the highest, as they also became liable proportionately to the extent of the difference between the debt of their old district and the greater debt of No. 26.

The question is: Was the consolidated school district, by assuming the debts of the component districts, "allowed to become indebted" *within the purview of the Constitution* and thereby subject to its restrictions? As stated above, it is admitted that the various debts of the various districts (the entire bonded amount sought to be refunded) when first incurred where created by the vote of the people in strict accordance with the provisions of the Constitution. Upon the consolidation of these districts, the total debt by the terms of the statute became a charge against the consolidated district. It is important to note that the consolidated district merely assumed the debt; it did not *create it*. Furthermore, it did not become indebted by virtue of any act of its agencies, but succeeded to an old debt by virtue alone of the statute and the voters who chose to consolidate the districts. It was in fact born in debt. Upon consolidation the identities of the component districts fade and disappear completely and in their stead emerges a new entity in the form of the consolidated district. This new entity spontaneously becomes the owner of the properties and liable for the old debts. The fact that some persons and some property embraced in the limits of the consolidated district are required to pay more taxes than they would have had to pay had the districts not been consolidated, cannot be considered a constitutional factor in preventing the consolidation of the districts in view of the power of the Legislature to do so. It is no constitutional objection, says Dillon, "that the property brought within the corporate limits (by annexation) will be subject to taxation to discharge a pre-existing municipal indebtedness since this is a matter which, in the absence of such constitutional restriction, belongs wholly to the Legislature to determine." [1 Dillon on Municipal Corporations (5 Ed.), sec. 355.]

As likewise said in True v. Davis, 133 Ill. 522: "If, then, there is no constitutional restriction upon annexation of municipalities and no constitutional right to exempt the property of taxpayers from burdens other than debts contracted by the municipality while the property or persons was within its jurisdiction, it would seem inevitably to follow that there is no constitutional ground to object that the burden of some taxpayers will be larger in consequence of annexation than it would otherwise have been." This case dealt with the expansion of Chicago as affected by a constitutional limitation of indebtedness of five per cent. It was admitted that upon the assumption of the debts of the annexed territory the enlarged city would exceed this limit. The Illinois Supreme Court there held that this fact could not be held to be an element preventing annexation. This case is approved in Kocsis v. Chicago Park District, 362 Ill. 24, 103 A.

L. R. 141, which had to do with the consolidation of park districts in Chicago, causing the combined indebtedness assumed by the enlarged district to exceed the constitutional limit. The Court there held that the constitutional inhibition was directed solely against the incurring of a *new* debt.

The holding in People ex rel. Haight v. Brown, 169 N. Y. Rep. 695, Appellate Division, affirmed in 216 N. Y. 674, which dealt with the expansion of the City of White Plains was also that as no *new* indebtedness was incurred, the constitutional limitation did not apply. To the same effect were the rulings in Moore v. Pittsburg, 254 Pa. 185, and Davidson v. Town of Kirkwood, 152 Ga. 357.

"The effect of the constitutional provision is limited to those municipal transactions which create indebtedness; hence, it *does not prevent the annexation or consolidation* of two or more cities or other municipalities even if one of them has reached or exceeded the constitutional limit, for thereby the debt of the cities is not increased." [1 Dillon on Municipal Corporations (5 Ed.), sec. 191.]

We are irresistably drawn to the conclusion that the constitutional provision about incurring debts applies to the *creation* of *new* debts. Therefore, it does not limit or cause conflict with the statute in question, providing for the assumption of the old debts of the school districts consolidated into one entity. The relator here, under the terms of said Section 9356, has assumed an aggregate indebtedness theretofore constitutionally created and has become bound to pay the same. As said constitutional provision is not applicable no vote was necessary, and we must rule against respondent's contention.

For a second reason, the respondent refuses to register the bonds on the ground that the issue of the refunding bonds here offered for registration has not been submitted to the vote of the district and authorized by the consent of two-thirds of the voters as required by Section 12 of Article X of the Constitution of Missouri.

The refunding bonds were issued in pursuance of the authority granted by Section 2892, Revised Statutes 1929, as amended by the Laws of 1931, page 138 and Section 9200 as amended by Laws of 1931, page 348. Sections 2892 and 9200 et seq., allow the refunding bonds to be exchanged for outstanding bonds or to be sold for cash and the proceeds used for redeeming outstanding bonds, both of which procedures we hereby approve.

This contention has already been decided in this State by the case of State ex rel. Proctor v. Walker, 193 Mo. 693, 92 S. W. 69, to which decision we adhere. In that case the school district of the city of Monroe had issued $18,000 of bonds with the approval of two-thirds of the voters of the district. Under the provision of the statute (now Sec. 2892, R. S. 1929) it proceeded to refund these bonds and submitted a refunding issue in the same amount to respondent, the

clerk of the school board, for signature. He refused to execute said bonds, and mandamus was brought to compel him to do so. Respondent insisted that in view of said Section 12, Article X the bonds could not be issued without an election and assent of two-thirds of the voters. The court said: "It is made manifest from the terms employed in this provision of the Constitution that the dominating thought in the minds of the framers of that instrument was to surround certain municipalities and other subdivisions of the State with constitutional restrictions upon the subject of incurring indebtedness. It is equally clear that it never entered the minds of the framers of the organic law of this State, by the language used in Section 12 of Article X of the Constitution, that after a debt had been incurred in strict compliance with the terms of the Constitution, the General Assembly should be prohibited from enacting appropriate measures to meet the conditions confronting corporate bodies which had incurred such indebtedness, providing for the extension and settlement of such indebtedness along lines not prohibited by any provision of the Constitution, and, which, in view of the conditions surrounding the municipality, would be less burdensome to the taxpayers." The court held that such provision of the statute extending the time of payment and refunding such indebtedness, so long as the debt was not increased, was not inhibited by the Constitution.

The weight of authority holds to the view that the issuance of bonds by a public corporation for refunding a valid, out-standing indebtedness does not increase the total indebtedness within the meaning of a constitutional limitation or require the consent of the voters for the issuance of such bonds, but merely changes the form of an existing debt. [See annotation in 97 A. L. R. 442 and cases cited therein; 44 C. J., p. 1132, sec. 4065; 1 Dillon on Municipal Corporations, sec. 202.] An examination of the decisions of this State indicate that we are in accord with this view so long as the outstanding indebtedness to be refunded has been voluntarily incurred in compliance with the Constitution upon the approval of two-thirds of the voters.

In his insistence that the refunding bonds cannot be issued without the approval of the voters of the district, the respondent leans heavily on the case of State ex rel. Clark County v. Hackmann, 280 Mo. 686, 217 S. W. 318. There it was held that an issuance of bonds to be sold and the proceeds used for the payment of judgments outstanding against the county constituted a new debt requiring the vote of the people. However, the facts in that case are different from the one at bar and in the true sense of the word the bonds there issued were not refunding bonds. They did not constitute the same debt but created a different one. Furthermore, the proceeds of the bonds were intended for the payment of liabilities not theretofore incurred by the vote of the people. All that the court there decided was that the purpose for which the indebtedness was to be created

came under the purview of Section 12 of Article X of the Constitution and that the inhabitants of the county had the right to incur such indebtedness upon the proper vote as the debt thereby created was a new debt in the constitutional sense. We do not consider the decision reached in that case in any way inimical to the relator's position in this case. We feel that the decision was correct, but we are constrained to say that we are not in accord with the reasoning in the opinion. In part it is based on a legislative construction applicable to cities of the fourth class only and not applicable to counties, nor, as in the case at bar, to school districts. If any statements in said opinion can be properly advanced as being controlling here, we hereby overrule them. The opinion also relies on the case of Doon Township v. Cummins, 142 U. S. 366, which is not in agreement with the weight of authority. That case construed a constitutional provision of Iowa similar to Section 12 of Article X as limiting a statutory provision for refunding bonds, in which the court distinguished between the two alternatives provided for such refunding, namely: First, the sale of refunding bonds and application of the proceeds so realized to the retirement of the outstanding bonds, and second,—the exchange of a new bond for an old bond. The United States Supreme Court disapproved the first alternative on the ground that it, in effect, increased the debt. Speaking of this distinction the Circuit Court of Appeals for the Eighth Circuit in City of Huron v. Second Ward Savings Bank, 86 Fed. 272, said: "The distinction seems to be more nice than real and in view of the vigorous dissent which is recorded with the opinion, we may be permitted to doubt whether it will ever be made again." The holding in the latter case was that bonds which were issued to refund a valid indebtedness neither create any debt nor increase the debt of the municipality which issues them. Again, speaking of the Doon case, the court in Kelly v. Central Hanover Bank & Trust Co., 11 Fed. Supp. 498, says that it has not been referred to by the Supreme Court since it was decided and that it has frequently been criticized and but rarely followed. We regard the interpretation of the constitutional provision reached in the Doon case as being supertechnical, find that it is not in accord with the weight of authority and decline to follow it. The cases of State ex rel. Sedalia v. Weinrich, 291 Mo. 461, 236 S. W: 872, and Consolidated School District No. 4 of Greene County v. Day, 328 Mo. 1105, 43 S. W. (2d) 428, advanced by respondent are of no aid here as they had to do with an attempt to refund a *judgment* indebtedness, not theretofore approved by the vote of the district, by an issuance of bonds not approved by the voters.

■ [5] Lastly, respondent complains that the levy of the tax to provide interest and a sinking fund for the payment of said refunding bonds was unauthorized because the issuance of bonds was not voted by the people. This court has held more than once that the

constitutional requirement of the tax levy is self-enforcing and that no vote is necessary.

In State ex rel. Audrain County v. Hackmann, 275 Mo. 534, 205 S. W. 12, we quoted from East St. Louis v. Amy, 120 U. S. 600, a passage which properly expressed the previous holdings of this Court: "This provision for the tax was written by the Constitution into every law passed thereafter by the Legislature allowing a debt to be incurred; and, in our opinion, it took the place in existing laws of all provisions for taxation to pay debts thereafter incurred under old authority which were inconsistent with its requirements. It was made by the people a part of the fundamental law of the State that every debt incurred thereafter by a municipal corporation, under the authority of law, should carry with it the constitutional obligation of the municipality to levy and collect all the necessary taxes required for its payment." [See also Evans v. McFarland, 186 Mo. 703, 85 S. W. 873; State ex rel. City of Columbia v. Allen, 183 Mo. 283, 82 S. W. 103; Benton v. Scott, 168 Mo. 378, 68 S. W. 78.]

For the reasons stated, the peremptory writ of mandamus should issue. It is so ordered. All concur.