THE STATE ex rel. PROCTOR et al. v. WALKER
et al.

In Banc, February 26, 1906.

1. **MUNICIPAL INDEBTEDNESS: Refunding Debt: Extension Beyond Twenty Years: Statute: School District..** A school district is not prohibited by the constitutional section requiring that provision be made, at the time of the creation of a debt, for an annual tax sufficient to pay the interest as it falls due and "to constitute a sinking fund for payment of the principal thereof within twenty years from the time of contracting the same," from funding its debt when it comes due by issuing new bonds for the same amount to run twenty years. And section 5157, Revised Statutes 1899, as amended by Laws 1901, page 52, authorizing counties, cities and school districts, to fund their debts by issuing new bonds to run not less than five nor more than twenty years, is not unconstitutional, even though the time since the old bonds were authorized, when coupled with the life of the new bonds, would make the new bonds fall due more than twenty years after the debt was first created.

2. ———: ———: ———: ———: ———: **Case Stated.** A school district legally issued ten-year bonds for building a schoolhouse, and the debt not being paid at the end of the ten-year period, the school board issued new bonds of the same amount at a reduced rate of interest to run for twenty years, the proceeds to be used in taking up and paying off the old bonds. *Held,* first, that the debt was still a binding and subsisting debt of the district, and could be enforced against it by the creditor or an individual, and the constitutional provision which required the board to levy an annual tax to provide a sinking fund for its payment within twenty years was self-enforcing; second, the statute authorizing the board to fund the debt by issuing the renewal twenty-year bonds is not violative of that constitutional provision, but simply provides a new remedy for paying the debt in the least burdensome way.

3. ———: ———: **Constitutionality: Presumption.** The presumption is in favor of the constitutionality of a statute which seems to be a mature legislative evolution, and before the court would be warranted in holding it unconstitutional its invalidity in that regard should appear beyond a reasonable doubt.

State ex rel. v. Walker.

## Mandamus.

PEREMPTORY WRIT AWARDED.

*Dysart & Mitchell* for relators.

(1)   The statute makes direct provision for refunding such bonds as these. Sec. 5157, R. S. 1899, as amended by laws 1901, p. 52.   Such statute authorizes refunding bonds.  1 Abbott on Municipal Corporations, secs. 172, 173; Tiedeman on Municipal Corporations, sec. 197; Simonton on Municipal Bonds, secs. 59, 126, 128; 2 Beach on Public Corporations, secs. 928, 929; City of Huron v. Bank, 49 L. R. A. 534; 2 Smith on Modern Law Mun. Corp., sec. 993.   The refunding bonds neither create nor increase the debt.   They only change the form of the debt to the advantage of the district.   Board of Com. v. Bank, 108 Fed. 505; Galena v. Corwith, 48 Ill. 423.   (2)   This section, 5157 Revised Statutes 1899, amended, Laws 1901, p. 52, is not in conflict with either the letter, object or spirit of section 12, article 10 of the Constitution of Missouri.  That provision of the Constitution was copied, almost word for word, from the Constitution (1870) of the State of Illinois, and the Supreme Court of that State has passed upon and construed this provision of that Constitution in a case like the one here before the court.  Constitution, sec. 12, art. 10; Constitution of Illinois, I Starr and Curtis Statutes, chap. 24, par. 63, clause 5; Kane v. City of Charleston, 161 Ill. 179; 2 Debates of the Constitutional Convention, State of Illinois, 1870, pp. 1256-1260.   (3)   The right of municipalities, counties, cities, school districts, etc., to refund their bonds and extend the payment thereof, under lower interest rates, to a time more than twenty years beyond the date of the original issue has for many years, under our present Constitution, been fully recognized by the legal profession. Many corporations, through their officers, have given this long continued and unquestioned interpretation to this statute and Constitution, and so also the

registering officers of the State. This all lends strong force to its correcteness. State v. Etchman, 189 Mo. 648. (4) Where the required statutory and constitutional provisions was made, at the time of the issue for payment of interest and principal on the bonds as same came due, the same will not be rendered void or become worthless by neglect by the officials of the municipality to do their duty. 1 Abbott Municipal Corporations, sec. 223; Wade v. Travis County, 174 U. S. 499; Marion County v. Coler, 67 Fed. 70. It was the duty of the school district, when the original bonds were issued, to provide for a tax to pay the interest and principal as it fell due. It is alleged and admitted that this was done. Constitution, art. 10, sec. 12; State ex rel. v. Allen, 183 Mo. 283; Evans v. McFarland, 186 Mo. 726. The fact that the revenue officers failed to extend the levy and collect the tax for the sinking fund did not invalidate the bonds or pay the debt. (5) Statutes should not be held unconstitutional where any other reasonable construction can be given them, and they will not be declared void as in violation of the Constitution except where the violation is clear and plain. Before this court would be warranted in holding it invalid because in conflict with the Constitution, it should be satisfied of its invalidity beyond a reasonable doubt. State v. Etchman, 189 Mo. 62; State v. Layton, 160 Mo. 498; State v. Hamey, 168 Mo. 167; State v. Tower, 185 Mo. 94; Cooley on Const. Lim. p. 216; Sams v. Railroad, 174 Mo. 96; Kane v. City of Charleston, 161 Ill. 169.

*Thomas N. Dysart* for respondents.

(1) The Constitution is supreme. A law cannot be in force in this State no matter when passed nor of how long standing which contravenes the provisions of the Constitution. Bailey v. Gentry, 1 Mo. 164; State ex rel. v. Maynard, 14 Ill. 419. (2) The provisions of the Constitution must be construed to mean exactly

what they say, and where the words employed when taken in their ordinary sense and in their grammatical arrangement, embody a definite meaning, the meaning thus apparent on its face must be adopted. State v. King, 44 Mo. 285; Gibbons v. Ogden, 9 Wheat. (U. S.) 188; People v. Railroad, 24 N. Y. 487; Hills v. Chicago, 60 Ill. 86; State ex rel. v. District Board, 7 L. R. A. 337; Sturges v. Crowninshield, 4 Wheat. (U. S.), 122. And when the language of the Constitution is plain it is not within the province of the court to speculate as to the purpose of the framers. State v. Irwin, 5 Nev. 111; Carrol v. State, 58 Ala. 396; Hills v. Chicago, 60 Ill. 86; Sturges v. Crowninshield, 4 Wheat. (U. S.) 122; Purdy v. People, 4 Hill (N. Y.) 384. Nor can surrounding circumstances and conditions, nor the history of the instrument itself, nor of any similar instrument, be considered in construing it. Test Oath Cases, 41 Mo. 373; Hamilton v. St. Louis County Court, 15 Mo. 23; Forsythe v. Hammond, 68 Fed. 774; People v. Fisher, 24 Wend. (N. Y.) 220; Walker v. Cincinnati, 21 Ohio St. 14; Whallon v. Ingham, 51 Mich. 503. Nor can wisdom, expediency, or justice of the provision be considered in construing the same. Cooley's Constitutional Limitations (6 Ed.), p. 87; Newell v. People, 7 N. Y. 97. Nor can the fact that the provision may work great inconvenience be considered when the intent is evident. Settle v. Van Evrea, 49 N. Y. 280; Greencastle v. Black, 5 Ind. 571; Newell v. People, 7 N. Y. 97. Nor can the courts give a strained construction or astute interpretation to a constitutional provision simply in order to relieve against hardship. Law v. People ex rel., 87 Ill. 392 (3) The courts should not so construe a section of the Constitution as to invite an evasion of its provisions. Our Constitution provides that a sinking fund must be construed to pay the debt in twenty years. This mandate is self-enforcing. State ex rel. v. Allen, 183 Mo. 283; Evans v. McFar-

land, 186 Mo. 727; East St. Louis v. Amy, 120 U. S. 600. And if obeyed there can be no possible reason for a refunding bond or any further extension or continuation of the debt, because the money will be on hand to meet the obligation at its maturity. (4) There is nothing in the Constitution contemplating a renewal or extension of the debt at the expiration of the twenty years, and such authority can not be implied merely from the power originally conferred to create the debt. 1 Abbott on Municipal Corporations, p. 388; Coquard v. Village of Oquawka, 192 Ill. 366; Merrill v. Town of Monticello, 138 U. S. 673; Coffin v. City of Indianapolis, 59 Fed. 221. The refunding bond merely provides an extension of the old debt; the form is changed but not the substance. 2 Beach on Public Corporations, secs. 928 and 929; 15 Am. and Eng. Ency. Law (1Ed.), 1263 and 1264; Powell v. City of Madison, 107 Ind. 114. (5) The policy of a constitution containing a provision of this nature is against incurring debts except where it is absolutely necessary, and in such cases the debt should be discharged at its maturity. Mayor v. Jones, 122 Ga. 455; Epping v. Columbus, 117 Ga. 281; City of Dawson v. Water Works Co., 106, Ga. 706. (6) It is plainly against public policy to allow a school district or other political subdivision to continue its obligations indefinitely. Epping v. City of Columbus, supra; City of Dawson v. Water Works Co., supra. If this were permitted then the school district could create a perpetual debt. Furthermore, they could borrow money to the full extent of the limit of five per cent imposed by the Constitution, and by continually refunding the debt at its maturity could prevent any further improvements in the district. (7) A strict interpretation of the constitutional provision would work no more of hardship on the present generation than would the authority to continue the debt beyond twenty years work a hardship on the next generation. The taxpayer of to-day should

not be allowed to shoulder his debts on the taxpayer of to-morrow.    (8)   The fact that the refunding bond is void does not leave the bondholder without remedy. He can compel a levy sufficient to pay the indebtedness. Evans v. McFarland, 186 Mo. 727; East St. Louis v. People, 124 Ill. 655; East St. Louis v. Amy, 120 U. S. 600; Law v. People, 87 Ill. 385; Mayor v. Jones, 122 Ga. 455; Epping v. City of Columbus, 117 Ga. 263.   In the case at bar the outstanding bonds have six years yet to run, and the levy could be spread over this time without any great injury to the district.

FOX, J.—This is an original proceeding in this court in which the relators ask the court to issue its writ of mandamus commanding and requiring respondents to sign and execute certain refunding bonds as ordered by the school board of the school district of the city of Monroe in the State of Missouri.  The facts upon which relators predicate their right to the writ sought in this proceeding are thus stated in the petition:

"Now at this day come relators and leave of court first being had, file their first amended petition and respectfully represent and show to the court that they, along with the respondent R. W. Walker, herein, are the duly elected, qualified and acting members of the school board of the school district of the city of Monroe in the State of Missouri, and that they have been such for many months last past; that the other respondent, Thomas J. Sharp, is the duly appointed, qualified and acting clerk of said school board of the said school district of the city of Monroe, Missouri.

"The relators further state that on July 1, 1892, the said school district, being duly authorized thereto by a vote of more than two-thirds of the qualified voters of the said district, issued bonds of the said district in the amount of $10,000 in the aggregate, bearing date of July 1, 1892, bearing interest at five per cent

per annum, payable semiannually, said bonds and all of them being due and payable July 1, 1912, with an option to pay the same or any part thereof at any interest paying date after ten years from the issue thereof; that the said school district through its said board, on July 15, 1892, being duly authorized thereto by a vote of more than two-thirds of the qualified voters of said district, issued the bonds of the said district to the amount of $5,000, which said bonds bore date of July 15, 1892, and interest at the rate of five per cent per annum, payable semiannually; said bonds were due and payable July 15, 1912, with an option to pay same on any interest paying date after five years from the issue thereof; that on the 2nd day of May, 1893, the said school board of the said district, being duly authorized thereto by a vote of more than two-thirds of the qualified voters of the said district, issued the bonds of the said district in the amount of $3,000, which said bonds bore interest at the rate of seven per cent per annum, and were payable in five years with the option to pay the same at any time; that at the time each of said issue of bonds was made and ordered, provision was made of record by said district for the collection of an annual tax sufficient to pay the interest on such indebtedness as the same fell due, and to constitute a sinking fund for the payment of the principal thereof within the time same was contracted to be paid; that by failure or inadvertence of the officers the said tax has not been levied and collected to provide for the sinking fund; that it would now be burdensome and oppressive on the taxpayers of said district to pay the interest on said debt and provide for and pay the principal when the same falls due under the original issue of bonds.

"That the said three issues of bonds amount in the aggregate to $18,000, and constitute the only debt of said district and do not now, and never did since their issue, exceed five per centum on the value of the tax-

able property of said district, and were each and all issued for the purpose of erecting school buildings and furnishing the same in said school district and for no other purpose, and the proceeds of said bonds were in fact used for said purpose and said bonds are each and all valid, binding and subsisting obligations on the said district, and there is now in the treasury no money to pay the principal of the said bonds or to form a sinking fund to pay the same at the time of their maturity; that the present school board constituted as above set forth under and by authority of section 5157, Revised Statutes 1899, as amended in the act of 1901, page 52, with the respondent, R. W. Walker, concurring and voting therefor, on November 15, 1905, duly passed and placed of record an order at a regularly called meeting of the said board, at which meeting of the board all the members thereof were present, to refund all said issues of bonds amounting to $18,000, and to issue refunding bonds therefor, to bear date December 1, 1905, and to bear interest at a lower rate, to-wit, at the rate of four per cent per annum, payable semiannually, which said refunding bonds were made payable twenty years after the date thereof, and at the same time said board, by an order of record, made provision for the collection of an annual tax sufficient to pay the interest on said refunding bonds as the same fell due and to constitute a sinking fund for the payment of the principal thereof within the time the same was contracted to be paid; that the said board negotiated and contracted to sell, and did sell, the whole of the said issue of the said refunding bonds of $18,000; that the said bonds were of the denomination of $500 each, payable to bearer, and were negotiated and sold for not less than their par value; that the said bonds were ordered to be prepared, and the same were ordered to be signed and issued for delivery by said respondents, R. W. Walker, as president of the school board, and by Thomas J. Sharp, as the clerk of the said board; that on the

1st day of November, 1905, under section 5166, Revised Statutes 1899, the said board ordered that notice be filed with the State Auditor, that said issues of $10,000, $5,000 and $3,000 as above set forth were called for redemption; that said notice was filed with the State Auditor on the 5th day of November, 1905; that the said issue of $10,000 bonds was called for payment on January 1, 1906; that said issue of bonds for $5,000 was called for payment on the 15th day of January, 1906; that the said issue of bonds of $3,000 was called for payment on the 1st day of January, 1906; that the said board further caused a notice of said call of the said bonds for payment to be duly published in the Globe-Democrat, a newspaper of large circulation, published in the city of St. Louis, Missouri; that the money and funds to meet and pay for said bonds aggregating $18,000, so issued as aforesaid and called for payment as aforesaid, was to be procured from the issue and sale of the said refunding bonds for $18,000, ordered as aforesaid, on the 5th day of November, 1905; that said refunding of said debt and bonds would lighten the burdens of the taxpayers of said district and would better the financial situation of said district.

"These relators further state that said refunding bonds have been prepared and presented to the said respondents to be signed and executed by them, and the law requires that said bonds be signed and executed by them as the officers of the said board of the said school district, and that the respondents have been requested to sign and execute the said bonds as ordered by the said board, but they have failed and refused, and still fail and refuse to sign and execute the same as ordered by the said board; and these relators say that they and the said school district have no means with which to meet and pay the said bonds heretofore issued by the said district and called as aforesaid for payment, and that they are without remedy in the premises by or

through ordinary process or proceedings at law; that by reason of the premises the matters herein are of far more than ordinary magnitude and importance to a great number of people, and any delay therein, such as bringing this proceeding in the circuit court at the first instance, would work an irreparable injury to the said district and to the inhabitants thereof, and these relators therefore pray this court to award against the said respondents an order of mandamus commanding and requiring them to sign and execute said refunding bonds as ordered by the school board of the said district, and for such other process, orders and remedies as may to the court seem to be meet and just.''

To this petition respondents filed their return and answer, which is as follows:

''Come now the respondents in the above-entitled cause and waive an alternative writ or any service herein, and for answer to the petition in said above-entitled cause, state that they admit each and every allegation therein contained.

''Respondents further answering, admit that the said R. W. Walker voted to refund the outstanding bonds mentioned in relators' petition.

''Respondents further answering, state that the proposed refunding bonds were to be issued by the school board of said school district, under authority of section 5157, Revised Statutes 1899, as amended by the Laws of 1901, p. 52.

''Respondents further state that they have been advised by legal counsel, and they verily believe, that said refunding bonds, if issued, would be void, because the said section 5157, Revised Statutes 1899, as amended by Laws of 1901, page 52, and under which said bonds are issued, is in direct conflict with section 12 of article 10 of the Constitution of Missouri, and therefore invalid.

''Respondents further answering, state that section 12 of article 10 of the Constitution of Missouri

clearly prohibits the said school board to suffer the debt evidenced by said present outstanding bonds to remain unpaid for a period of more than twenty years from the date of incurring said debt, and that said present outstanding bonds have already run for a period of more than twelve years, and the said refunding bonds about to be issued do but evidence a renewal of said original debt for a further term of twenty years, making said debt run more than twenty years from the date of incurring it, and that said proposed refunding bonds are therefore prohibited and void.

"Respondents further answering, state that said proposed refunding bonds are void, because section 12 of article 10 of the Constitution of Missouri prescribed that said school board should provide for the collection of an annual tax sufficient to constitute a sinking fund for the payment of the principal of said debt within twenty years from the time of contracting the same. And if said constitutional provision has been complied with there should now be on hand a sinking fund sufficient to pay more than one-half of said bonds, and at the maturity of said bonds there should be on hand a sinking fund sufficient to retire the whole indebtedness, and hence there could be no reason for said proposed refunding bonds.

"Respondents further answering, state that no authority could be granted by section 5157, Revised Statutes 1899, as amended by the Laws of 1901, page 52, to the said school board to issue said refunding bonds, because said section 5157 is unconstitutional as above set out.

"Respondents further answering state that they are advised, and that they verily believe, and for the reasons herein mentioned, they will render themselves personally liable in the event they sign and execute said proposed refunding bonds.

"Respondents further answering admit that the matters set forth in said petition are of far more than

ordinary magnitude and importance, and that any delay herein would work an irreparable injury to said school district, provided the said proposed refunding bonds would be a valid and subsisting legal obligation, but that the respondents believing said proposed refunding bonds to be void for the reasons herein set forth, join with relators in asking an early adjudication of the matter by this court.

"Defendants having fully answered, therefore pray this court that the writ of mandamus asked for in this cause be denied, and that the petition of the relators be dismissed."

To this answer relators filed their reply, in the nature of a motion for judgment upon the pleadings, which was as follows:

"Now at this day come the relators and move the court to order a writ of mandamus prayed for by relators upon the allegations in the return and answer of respondents filed in this cause, because the same gives no good and sufficient and legal reason why the said writ ought not to issue, but shows on the face thereof the allegations of relators' petition are true, and said writ ought to issue.'"

This constitutes the record in this cause, and it is now before us for consideration.

OPINION.

It is apparent that this record presents but one question for solution, that is, the validity of section 5157, Revised Statutes 1899, as amended by Laws 1901, page 52, which substantially provides that municipalities, counties, cities and school districts shall have the right to refund these bonds and extend the time of payment thereof, under a lower rate of interest. There is no dispute about the essential and necessary preliminary steps leading up to the issuance of the original bonds, evidencing the indebtedness of the school dis-

trict, nor as to the regularity of the proceedings which authorize the issuance of the refunding bonds in pursuance of the provisions of section 5157, supra. It is admitted by the return of respondents that the petition correctly states all the facts upon which the authority to issue the original bonds, as well as the refunding bonds, sought to be issued are predicated—hence the sole question presented to this court for consideration is, whether or not the action of the school board in ordering the issuance of the refunding bonds in pursuance of section 5157, was and is violative of and in contravention to section 12 of article 10 of the Constitution of this State. In other words, is section 5157 a valid subsisting law and was the school board, upon the facts alleged in the petition, authorized, in pursuance of the provisions of such law, to order the refunding bonds which are in controversy in this proceeding?

Section 5157, so far as it is applicable to the question in controversy in this proceeding, provides that "the various counties in this State for themselves, as well as in behalf of any township or parts of townships for which said counties may have heretofore issued any bonds, and the several cities, villages, incorporated towns and school districts are hereby authorized by their respective county courts, and said cities, villages and incorporated towns by their proper authorities, and the said school districts by their respective school boards, to refund any part or all of their bonded or judgment indebtedness, including bonds, coupons, or any judgment whether based on bonded or other indebtedness at a lower rate of interest, and for that purpose may make, issue, negotiate, sell and deliver renewal or refunding bonds and with the proceeds thereof pay off, redeem and cancel such judgments, or old bonds as the same are called for redemption: Provided, that said funding bonds shall not be sold for less than par value thereof, and that in no case shall the

193 Sup—45

amount of the debt of any such county, township, or parts of townships, or city, village, incorporated town or school district, nor the rate of interest on such debt, be increased or enlarged under the provisions of this chapter; and provided, also, that no funding bonds issued under this chapter shall be payable in less than five nor more than thirty years from date thereof, and that such funding bonds shall be in the denomination of not more than one thousand dollars nor less than one hundred dollars, and shall bear interest not to exceed five per cent per annum, payable annually or semiannually, and to this end each bond shall have annexed interest coupons, and the funding bonds and coupons shall be made payable to bearer: Provided, further, that nothing in this act shall be so construed as prohibiting any county, city, township or school district, that now has or may hereafter have a bonded or judgment debt (except as hereinafter provided) from funding or refunding such debt without the submission of the question to a popular vote whenever such funding or refunding can be done at a lower rate of interest than the debts so funded or refunded bore.''

It is insisted by respondents that the act as above indicated is violative of and in contravention of the provisions of section 12 of article 10 of the Constitution of this State. This constitutional provision provides that ''no county, city, town, township, school district or other political corporation or subdivision of the State, shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose; nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the assessment next before the last

assessment for State and county purposes, previous to the incurring of such indebtedness: Provided, that with such assent any county may be allowed to become indebted to a larger amount for the erection of a court house or jail; and provided further, that any county, city, town, township, school district, or other political corporation or subdivision of the State, incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for payment of the principal thereof, within twenty years from the time of contracting the same.''

It is made manifest from the terms employed in this provision of the Constitution that the dominating thought in the minds of the framers of that instrument was to surround certain municipalities and other subdivisions of the State with constitutional restrictions upon the subject of incurring indebtedness. It is equally clear that it never entered the minds of the framers of the organic law of this State, by the language used in section 12 of article 10 of the Constitution, that after a debt had been incurred in strict compliance with the terms of the Constitution, the General Assembly should be prohibited from enacting appropriate measures to meet the conditions confronting corporate bodies which had incurred such indebtedness, providing for the extension and settlement of such indebtedness along lines not prohibited by any provision of the Constitution, and which, in view of the conditions surrounding the municipality, would be less burdensome to the taxpayers. This constitutional provision, which was leveled at the creation of debts by municipalities more than at the time within which such debts should be paid, when it undertakes to limit the amount of indebtedness, uses no uncertain terms in doing so; but it expressly prohibits the incurring of a lia-

bility exceeding a certain per cent of the taxable property embraced in the territory of the municipality. Then follows the command of the Constitution that provision be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due and also to constitute a sinking fund for the payment of the principal thereof within twenty years from the time of contracting the same. Now, while these commands of the Constitution are self-enforcing, it is conceded that the failure to comply with them in no wise invalidates the debt, and the creditor or any taxpayer of the municipality may, by appropriate proceeding, compel the compliance with such constitutional provisions. It is significant, however, that the framers of the Constitution (who were doubtless close observers of human conduct and actions, as well as the many frailties of the human family), must have known that conditions would at sometime arise by reason of the carelessness or neglect of duty of officials or otherwise, in which this sinking fund would not be provided for as commanded by the Constitution, which conditions would necessarily demand some extension of the time of payment of such indebtedness; yet they failed to give any expression in the provisions of that instrument prohibiting an extension of the time of payment or appropriate legislation to meet such conditions, providing for the payment of such indebtedness along lines in harmony with careful and prudent business methods. While it may be said that the Constitution by its terms contemplated that the tax suggested would be levied and collected, and the sinking fund provided to meet such indebtedness when it became due; yet a failure to make such provisions, as commanded by the Constitution, as heretofore stated, in no way invalidated the debt; it is a valid subsisting indebtedness incurred in compliance with the Constitution, and such provision of the Constitution should not, if susceptible of any other reasonable interpretation, be construed as an inhibition upon the law-

making power to provide for an extension of time of the payment and refunding of such indebtedness upon terms satisfactory to the creditor and debtor, provided, of course, that the debt shall not be increased.

We repeat, that, if the bondholder or any taxpayer should insist upon a compliance with the provisions of the Constitution in respect to levying and collecting the tax to meet the indebtedness, there is an appropriate remedy for compelling such compliance; but we are unwilling to say, the debt being in existence, that the terms of the Constitution furnish an absolute barrier to the enactment of appropriate legislation which permits the creditor and debtor to adjust such indebtedness along lines to meet existing conditions and less burdensome to the taxpayers. At least we are of the opinion that if such inhibition upon the lawmaking power was intended by the framers of that instrument, such intention would have at least been manifested or indicated by reasonably clear and definite terms employed in the instrument.

While we do not mean to be understood as saying that the question of the power of the Legislature to enact section 5157, providing for the refunding of indebtedness of the character indicated in this proceeding, is absolutely without doubt, yet we do mean to say that in the absence in terms of any prohibition of extension of time of payment or of legislation of that character, and in view of the many conditions which might arise concerning the indebtedness permitted by the Constitution, and recognizing the Constitution as an instrument of a practical nature, founded upon the common business of life, it is extremely doubtful if any inhibition in respect to extension of time of payment or refunding the indebtedness, was contemplated by the provisions of the Constitution.

No one can apply that practical and common sense rule of interpretation of constitutional provisions as announced by that eminent and distinguished jurist and

author, Mr. Story, in his treatise upon the Constitution, without being led to the entertainment of the doubt heretofore expressed as to whether or not any inhibition upon the character of legislation assailed in this proceeding was contemplated by section 12 of article 10 of our Constitution. The rule was thus announced by Mr. Story: "Every word employed in the Constitution is to be expounded in its plain, obvious and common-sense meaning, unless the context furnishes some ground to control, qualify or enlarge it. Constitutions are not designed for metaphysical or logical subtleties, for niceties of expression, for critical propriety, or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature, founded on the common business of life, adapted to common wants, designed for common use, and fitted for common understandings. The people make them, the people adopt them, the people must be supposed to read them, with the help of common sense, and cannot be presumed to admit in them any recondite meaning or any extraordinary gloss." [1 Story, Const. (5 Ed.), sec. 451.]

While legislation of the character involved in this proceeding, providing for the refunding of existing indebtedness and issuing renewal bonds, has been upon the statute books of this State for a number of years, yet the precise question, so ably presented by counsel for respondents, involved in this proceeding, has never been in judgment before this court. The Supreme Court of Illinois, however, in Kane v. City of Charleston, 161 Ill. 179, has decided this precise controversy under a constitutional provision nearly identical with ours. In that case, as in the one at bar, the contention was urged that section 12 of article 9, Constitution of Illinois, 1870, put a limit upon the duration of all municipal indebtedness, that every municipal debt created since 1870 must be paid within twenty years, and that bonds issued for the purpose of refund-

ing such indebtedness are but an evasion of the Constitution and therefore void. The response of Mr. Justice WILKIN to the contentions in that case is so appropriate and applicable to the proposition before us in this proceeding that the length of the quotation from such response will, we trust, be pardoned. He said:

"It is not pretended that a municipal indebtedness, otherwise legally incurred, ceases to be valid and binding against the municipality upon the expiration of twenty years from the date of its being contracted. On the contrary, it is conceded that the obligation of the city to pay the $20,000 outstanding bonds still exists, and that it can be compelled to pay the same in full, notwithstanding more than twenty years have intervened since their issue. Conceding this to be true, it must also be admitted that if the holders of those bonds should take no steps to compel their payment, and the city should not voluntarily, by some means, liquidate the same, they would continue to be binding obligations upon the municipality, and it could be compelled to pay them at any time within the statutory period of limitation. It cannot, therefore, be said that the Constitution 'puts a limit upon the duration of all municipal indebtedness,' or that it requires absolutely all such indebtedness to be paid within twenty years.

"The real question in the case is, can the city council, when its power to do so is questioned by a taxpayer, issue its bonds in place of, or to supply means to meet maturing bonds, or for the consolidation or funding of the same, thereby consenting to an extension of the original indebtedness beyond the period of twenty years? In other words, is clause 6, section 63, of the statute above quoted, void under section 12, article 9, of the Constitution? That that clause of the statute is broad enough in its terms to authorize, and does expressly authorize, the issuing of bonds like those here in question, cannot be, and is not, denied. Does the language of the Constitution, which requires the muni-

cipal authorities to provide for the collection of a tax sufficient to pay the interest on bonds issued, 'and also to pay and discharge the principal thereof within twenty years from the time of contracting the same,' amount to a limitation upon the power of the Legislature to empower such authorities to refund the indebtedness by issuing other bonds at the expiration of the first period? There is no ground for claiming that this language of the Constitution is an express limitation upon such power of the Legislature, and if held to be such at all, it can only be done by construction or implication. That the language is not mandatory to the extent of affecting the validity of the indebtedness is clear from what we have already said,—that is to say, the mere fact that municipal authorities may fail to levy and collect a sufficient tax to pay the interest and principal within twenty years does not affect the validity or binding force of the indebtedness. By this we do not mean that municipal bonds issued without an attempt to make such provision would necessarily be valid. That question is not involved in this case, because the bill expressly states that the original bonds were issued in strict conformity with the provisions of this section of the Constitution. It is a well-known fact, that however honestly, or even wisely, public officers may attempt to provide, by taxation, a sufficient fund to meet an indebtedness maturing twenty years in the future, that effect will often fail because taxes levied can not always be collected, and because what may seem to be a sufficient levy at the time it is made, may, on account of changes in the valuation of assessable property, prove insufficient. And so we held in City of East St. Louis v. People ex rel., 124 Ill. 655 (following the decision of the Supreme Court of the United States in East St. Louis v. Amy, 120 U. S. 600), that if, at the end of twenty years, the provision first made proves insufficient to pay the whole indebtedness, the municipal authorities can be compelled to levy a sufficient tax upon the taxable

property within its jurisdiction to pay a judgment recovered for any part of the indebtedness remaining unpaid.

"It being the duty of the city authorities to provide for the payment of this indebtedness, and being given authority to do so by clause 6, section 63, supra, is there any sufficient reason for holding, by construction or implication, that the Constitution renders that statute void? We think not. The Constitution does not say that the indebtedness must be paid within twenty years. It does not say that if, from any unforeseen circumstances, the debt, or a part of it, remains due at the expiration of twenty years, without a sufficient fund on hand to pay it, the city council may not provide for an extension of the debt. The principle is elementary, and has been applied in cases almost without number by this court, that statutes should not be held unconstitutional where any reasonable construction can be given them which will avoid that result, and that they will not be declared void, as in violation of the Constitution, except where the violation is clear and plain."

It will be observed by an examination of that case that it was argued, as it is here, that it was the object of the people in adopting the latter clause of section 12 of article 9 of the Constitution of Illinois, which is the same as section 12 of article 10 of the Constitution of this State, to indicate a policy of the State that municipal indebtedness should not be created to extend beyond a period of twenty years. The learned judge in that case, responding to such contention, said: "We are not disposed to dissent from that view. On the contrary, we think an intention that such a limit should be placed upon such indebtedness is sufficiently manifested by the language of the Constitution itself. Nor are we disposed to call in question the wisdom of such provision. Evidently it is the duty, under this Constitution, of every city council, when it contracts a municipal in-

debtedness, to faithfully and honestly provide for the levy of the tax sufficient to pay it within twenty years. Failing to do so, it could doubtless be compelled to perform that duty. But the question here is, when the attempted discharge of that duty has failed to accomplish its object, what is the remedy? Does the public policy which should have been carried out but was not, take away from the city council the power given it by the Legislature, as provided in paragraph 6, supra? It is also a matter of public interest that oppressive taxation should, as far as possible, be avoided, and if, in the judgment of the city council, the emergency which has here arisen can be met with less inconvenience and with less oppression by issuing bonds bearing the lower rate of interest, to mature in the future, than by levying a tax to be collected in a single year, we see no reason why, from the standpoint of public policy, it might not be allowed to do so. It was said in City of Quincy v. Warfield, 25 Ill. 317: 'It is true, the provisions of the charter authorizing the issuing of bonds do contemplate that the city council will provide, by taxation, for their payment when due, . . . and establish a sinking fund for that purpose, and doubtless that is the true policy.' Nevertheless, it was held in that case that the failure to perform that duty did not deprive the city council of the power to issue a new bond in payment of the old, if not prepared to pay it at maturity.''

Legislation substantially in form as that assailed in this proceeding his been in existence in this State for nearly a quarter of a century, and it is but common knowledge that municipalities and other subdivisions of the State have availed themselves of its provisions and put them into practical operation. Its validity has been fully recognized by the people, the legal profession and all officials of this State who were required to perform any duty under the provisions of such legislation; hence it is important that we be not unmindful of the repeated admonition to courts, when they are called upon

to pronounce the invalidity of the acts of the Legislature, passed with all the forms and ceremonies required to give it force, that they approach the question with great caution. The presumption is in favor of the constitutionality of this act, and before this court would be warranted on holding it invalid, because in conflict with the Constitution, it should be satisfied of its invalidity beyond a reasonable doubt. [Ewing v. Hoblitzelle, 85 Mo. 64; Lynch v. Murphy, 119 Mo. 163; State v. Addington, 77 Mo. 110; State ex rel. v. Railroad, 48 Mo. 470.]

We have thus indicated our views upon the proposition involved in this proceeding. The respondents, by their return, challenge the constitutionality of section 5157, Revised Statutes, as amended by the Laws of 1901; hence the burden is upon them to show that said section is plainly and clearly in violation of the provisions of the Constitution; having failed to do so and it appearing that all the provisions of law in respect to refunding the bonds heretofore issued, as well as those sought to be issued, in renewal of them, have been complied with, it is therefore ordered that the peremptory writ of mandamus be awarded as prayed for in the petition.

All concur.