KANSAS CITY POWER & LIGHT COMPANY, a Corporation, Appellant, v. TOWN OF CARROLLTON, HAROLD M. AUSTIN, Mayor, MAT DRAKE, ELMER DANIELS, FRANK MARSHALL, WILLIAM L. BEAMS and OTTO STEELE, Councilmen.—142 S. W. (2d) 849.

Court en Banc, September 16, 1940.*

*NOTE: Opinion filed at May Term, 1940, July 29, 1940; motion for rehearing filed; motion overruled at September Term, 1940, September 3, 1940; second motion for rehearing filed; motion overruled September 16, 1940.

804

*Johnson, Lucas, Graves & Fane, S. J. Jones* and *John D. Taylor* for appellant.

*Bowersock, Fizzell & Rhodes, Chas. R. Timmons, Dudley D. Thomas, Jr., Wade W. Maupin* and *W. A. Franken* for respondents.

CLARK, J.—Appeal from circuit court of Carroll county. Appellant is the successor to the rights and title of the Water, Light & Transit Company mentioned in Ordinance No. 347 of the Town of Carrollton. The respondents are the Town and its Mayor and Councilmen. The Town of Carrollton is governed by special charter and contains between 4000 and 5000 inhabitants. Appellant brought two suits which were consolidated and tried as one. The purpose of the suits was to enjoin the Town from constructing a municipal electric and water plant and to procure a declaratory judgment construing certain provisions of said ordinance so as to compel the Town to either purchase appellant's plant or to renew its franchise. The decree was for the defendants (respondents), the chancellor holding that the Town has the right to construct and maintain a light plant or water plant and that all rights, privileges and franchises of the plaintiff under said ordinance terminated on January 24, 1939.

Ordinance No. 347 was duly adopted by the Council of said Town on January 24, 1919. Its provisions, so far as material here, are as follows: Section 1 granted a franchise to the Water, Light & Transit Company for the construction and operation of an electric plant and waterworks. Section 13 obligated the Town to rent from the company a certain number of fire hydrants, and Section 18 required the Town to take from the company all current it would use for street lights. Sections 24, 26, 30 and 31 are as follows:

"Section 24. COUNCIL AUTHORIZED TO LEVY TAX—This Ordinance and contract shall be binding in all of its terms upon both the Town and the Water, Light & Transit Company upon its ratification by a majority of the qualified voters of said Town voting at a special election to be called, and held, as hereinafter provided. And if, at said special election two-thirds (2/3) of the qualified voters of said Town voting thereat, vote in favor of the ratification of this Ordinance, then the Council of said Town shall have the right and thereby shall be authorized to levy annually, within the constitutional limits, such rate of taxation on all taxable property situated in said Town as may be necessary for the purpose of paying all bills which may accrue to said Water, Light & Transit Company on account of water and light service provided for in this Ordinance and contract, which said moneys shall be kept as a separate fund for such purpose and shall not be used or expended for any other purpose and shall be known as 'Water and Light Fund.'

"Section 26. TOWN NOT TO ERECT LIGHT PLANT OR WATERWORKS—RESERVE RIGHT TO PURCHASE—The town agrees that it will not erect or maintain a water plant or an electric light plant except that it becomes the owner of the water and light

plants of the company and said town thereby reserves the right, at its option, at any time to purchase of said company said waterworks and electric light plant, including all extensions thereof and everything thereto pertaining, in use and useful in obtaining and distributing water and in making, generating and distributing electricity to the Town and inhabitants thereof at the time of purchasing of waterworks and light plant, by paying therefor the fair and equitable price to be ascertained, if said Town and company cannot agree, by the Public Service Commission of the State of Missouri or any other Board or Commission exercising the same or similar powers now exercised by the last named Commission, or by duly authorized agents of the same. In the event that said waterworks and electric light plant, at the date of purchase by said Town, shall be incumbered by mortgage, deed of trust, or other lien or incumbrance, such incumbrance shall be subject to the right of said town to purchase as provided herein, and said Town shall, upon purchase, assume the payment of such incumbrance as a part of the consideration of the purchase price, provided that in no case shall said Town assume or become liable for any incumbrance or liability of said company in excess of the fair and equitable value of said property at the time of purchase, and as ascertained as above provided, and said Town shall in no event exercise the right of purchase without the consent of two-thirds (2/3) of the qualified voters of said Town voting at an election held for that purpose. If at the expiration of this franchise, the Town has not purchased the said property of the company, as herein provided, then, this franchise shall be renewed and the Town will continue to rent fire hydrants from said company and purchase from said company electricity for street illumination.

"Section 30. FRANCHISE TRANSFERABLE—The Company shall have the right to assign and transfer this contract and franchise in whole or in part; that is to say, that said company may assign and transfer all the right and privileges under this franchise in so far as it relates to the waterworks, or it may assign and transfer that part which relates to the electric light plant, or may assign and transfer said franchise in its entirety and all rights and privileges hereunder, upon such assignment and transfer, shall vest in the assignee, and such assignee shall file with the Town Clerk his or its written obligation to accept and perform all the things required to be done by the company.

"Section 31. TERM—This Ordinance and contract is made for a term of Twenty (20) years from the date of the passage and adoption of this Ordinance by the Council of the Town of Carrollton, Missouri, unless sooner terminated by mutual agreement or competent authority."

The ordinance was duly submitted to the voters of the Town and approved by more than two-thirds of the votes cast. Since the adop-

tion of the ordinance the company has continued to furnish electricity and water to the Town and its inhabitants and has spent large sums in maintaining, improving and extending its plant. In August, 1938, the Town Council called an election to be held on September 27, 1938, to vote bonds for an electric plant and waterworks to be owned by the Town. These bond issues were approved by more than two-thirds of those voting at the election. It was shown in evidence that the proposed light and water systems could not be put in operation prior to January 24, 1939. In October, 1938, the Town made an offer to purchase appellant's electric distribution system and appellant offered to sell its entire light and water properties, but the parties were far apart as to price and nothing came of the negotiations. Other portions of the evidence will be mentioned later. ·

As to appellant's contentions, we quote from its brief as follows: "(a) Appellant contends that said franchise contract is a separable contract consisting of (1) a franchise for an electric light plant, (2) a franchise for a waterworks, (3) a contract for street lighting, and (4) contract for water hydrant service; that the failure of the Town to exercise its purchase option prior to the end of the initial term of twenty years of said franchise contract automatically renewed (1) the franchise for an electric plant, (2) the franchise for a waterworks, and (3) the contract for street lighting service, and each of them, for an additional term of twenty years from January 25, 1939, subject, however, to the right of the Town at any time during the new term to exercise its purchase option."

Respondents contend that the provision in the ordinance, purporting to bind the Town to refrain from erecting or maintaining an electric or water plant except by purchasing the company's plant, was void from the beginning and that all rights of appellant under the ordinance terminated on January 25, 1939.

We agree with appellant that the ordinance contains four separate and independent provisions. Section 30 clearly provides that the franchise for lights and the franchise for water are separable. Nor do we see anything in the ordinance which makes either franchise dependent upon the contract of the Town to rent fire hydrants or buy current for street lights. Respondents say that this renders the entire ordinance void, because it was submitted as one single proposition without giving the voters a chance to pass on each provision separately. In making this contention, respondents overlook the fact that the council at that time had the power to grant the franchises for lights and water without submitting them to a vote of the people. [Section 9122, Revised Statutes 1919; Section 10172, Revised Statutes 1919; State ex inf. McKittrick v. Springfield City Water Co., 345 Mo. 6, 131 S. W. (2d) 525.] Under the statute then existing (Sec. 10173, R. S. 1919) it was necessary to submit to the voters the contract for hydrant rentals and the contract to purchase current for street lighting. We

need not decide whether it was proper to submit both these contracts to the voters as one proposition, because they have been fully performed for the initial twenty-year period and we are compelled to hold that they are both invalid after the expiration of such period.

Appellant concedes that the contract for hydrant rentals was limited to twenty years by Section 10173, supra, but contends that at the date of the ordinance there was no statutory limitation on the length of time the council could contract for current for street lighting. Respondents contend that such a contract is impliedly limited to a period of not to exceed twenty years by Section 12 of Article X of the Missouri Constitution, and we hold that contention is correct. Section 11 of Article X of our Constitution places a tax limit for general revenue purposes of fifty cents on the one hundred dollar valuation for towns of the class of Carrollton.

Section 12 of the same article provides: "No . . . town . . . shall be .allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the consent of two-thirds of the voters thereof voting on such proposition, at an election to be held for that purpose; nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, . . . *and provided further,* That any . . . town . . . incurring any indebtedness requiring the assent of the voters as aforesaid, shall before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years of the time of contracting the same . . ."

The tax authorized by Section 12, with the requisite assent of the voters, is in addition to the tax authorized by Section 11 (Lamar Water & Lt. Co. v. City of Lamar, 128 Mo. 188, 26 S. W. 1025). Under Section 11 the tax limit for all purposes, without a vote, was fifty cents, but the evidence shows that a levy of more than sixty cents was necessary to pay for hydrant rentals and street lights alone. Therefore the contracts for hydrant rentals and street lights created a yearly debt in excess of the yearly revenue and it was necessary to, and the Town did, obtain the assent of the voters to levy an additional tax under said Section 12. But under Section 12 the voters could not authorize the creation of such a debt or the levying of such an additional tax for a longer period than twenty years.

Appellant says that a contract for the purchase of water or electricity in yearly installments is not a "debt" within the meaning of said Section 12, and cites: Lamar Water & Lt. Co., supra, and Saleno v. Neosho, 127 Mo. 627, 30 S. W. 190. A careful reading of those cases convinces us that neither of them holds that a contract by

a municipality for yearly payments in excess of the yearly revenue does not create a debt within the meaning of Section 12 of Article X of our Constitution. What those cases do hold is that such an installment contract does not create a debt for the *aggregate* sum which may become due over the whole duration of the contract. In other words, such a contract does not contravene said section of the Constitution, even though the aggregate installments exceed five per cent of taxable property, unless one or more of the yearly installments exceeds the yearly revenue. But each installment becomes a debt as it falls due and, if it exceeds the revenue provided for the year in which it falls due, there is no way in which it can be paid except by a levy under said Section 12. To illustrate: in the instant case if the contracts for hydrant rentals and street lighting did not create debts within the meaning of said Section 12 then such contracts were void: because the annual installments were greater than the annual revenue which the Town could possibly provide by a tax levy under Section 11 and the only purpose for which a tax can be levied under Section 12 is for the payment of *indebtedness*. The Town fully recognized this and accordingly obtained the assent of the voters for the levy of an additional tax to pay this installment indebtedness as it should become due. Does said Section 12 require such installment indebtedness to be paid within twenty years from the time of contracting the same? Appellant argues that the last proviso above quoted from said Section 12 pertains only to *bonded* indebtedness. Some of the language used in Saleno v. City of Neosho, supra, would seem to sustain that argument, but we think the true meaning of the proviso is that "any indebtedness requiring the assent of the voters" must be paid within twenty years. True, the installment contracts in the instant case do not draw interest and, if each installment is paid when due, no sinking fund is required. However, it is necessary to levy an annual tax to pay the installments and the only authority for such levy is contained in the proviso. To that extent the proviso certainly applies to installment indebtedness as well as to bonded indebtedness. The accumulation of interest may furnish a reason for limiting the duration of bonded indebtedness which does not apply to installment indebtedness, but other considerations make it inadvisable to bind a municipality for too long a period by either method. The policy of our law in this respect is shown by many statutes which now limit the time for which a municipality may contract or grant franchises. We think that said Section 12 means that when *any* indebtedness, installment or otherwise, is incurred under its authority an annual tax must be provided to pay such indebtedness within twenty years.

Therefore, we hold that neither the contract for hydrant rentals nor the contract for street lighting is binding on the Town after the termination of the twenty-year period on January 24, 1939.

Appellant says that, notwithstanding the provisions contained

in Section 26 of Ordinance 347 purporting to bind the Town to continue to rent hydrants and purchase current for street lighting after twenty years are void, the other provisions requiring the Town to renew appellant's franchise and to refrain from erecting a municipal plant are enforceable.

While the Town was without authority to grant an exclusive franchise, it could, at least for a reasonable length of time, bind itself not to construct a municipal plant. [City of Walla Walla v. Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341; Vicksburg v. Water Co., 202 U. S. 453, 50 L. Ed. 1102.] In the Walla Walla case the city had granted a water franchise for twenty-five years, reserving the right to condemn and purchase the plant, but agreeing that it would not construct or own any other plant except that of the franchise holder. Later when the city, within the twenty-five year period, attempted to construct a municipal plant the court sustained an injunction. In the Vicksburg case the court reached the same conclusion upon a similar state of facts. In each of those cases the attempt of the city to construct its own plant was made during the initial period for which the franchise was granted. The question of whether the city would be so restricted during a *renewal* of the franchise was not involved. Nor is it necessary for us to decide whether the Town could so restrict itself during the renewal period, for, as we read Ordinance No. 347, the Town only agreed to refrain from constructing a municipal plant during the initial period of the franchise and did not agree to so refrain during any extension. Section 31 of the ordinance provides "this ordinance and contract is made for a term of twenty years." Section 26 provides "if at the expiration of this franchise, the Town has not purchased the said property of the company, as herein provided, then, this *franchise* shall be renewed and the Town will continue to rent fire hydrants from said company and purchase from said company electricity for street illumination." In and of itself, the term "franchise" comprised only an easement for the use of the streets as shown by Section 1 of the ordinance. Of course, a franchise, when acted upon, may become a contract. Also a franchise may be granted or accepted on conditions which, if valid, may become a part of the franchise contract; but the point we make is that even if the agreement to refrain from constructing a municipal plant was a condition for accepting the franchise for the original period, it was not expressly made a condition for accepting a renewal of the franchise. This contruction, we think, is in harmony with the position of appellant. Appellant says that the ordinance provides for two franchises and two contracts, all separable. We think our construction of the ordinance is also in harmony with State ex inf. McKittrick v. Springfield City Water Company, supra, wherein we held that the franchise or easement granting the power to a utility to use the public streets in the conduct of its business is separate and dis-

tinct from a contract by the city with the utility for lighting the streets or supplying water for public purposes.

On this branch of the case appellant cites Superior Water Co. v. City of Superior, 263 U. S. 125, 68 L. Ed. 204. There the city had granted a franchise for thirty years, with an agreement to renew for a like period *on the same terms and conditions* existing at the end of the first period or purchase the plant in a specified manner. The court held the agreement valid, but the case is not in point here if our construction of the ordinance is correct, to-wit; that the Town did not agree to refrain from constructing a municipal plant during the renewal period. .

It may be argued that, because the Town attempted to bind itself to continue to rent hydrants and to buy current for street lights from the company, it impliedly intended to continue the restriction as to erecting a municipal plant. We cannot write such meaning into the contract by implication. In Joplin v. Light Co., 191 U. S. 150, it was held that the grant of an electric franchise to a private company raised no implication that the city would not erect its own plant.

Restraints upon governmental power will not be readily implied. In view of our legislative policy to generally restrict municipal contracts to twenty years or less, we are not entirely sure that an agreement by the Town to refrain for forty years from erecting its own plant would not be void for unreasonableness, even if such agreement were expressly made. Also, we are impressed with respondents' argument that the Town lacked power to bind itself to refrain from constructing its own plant for a longer time than it could contract for hydrant rentals and street lighting. It seems reasonable that since those contracts have terminated the Town should have the power to erect its own plant to supply such essential services. The statute gave the Town the power to buy those services from a private company or to produce them from its own plant. It could buy them for a period of twenty years only and, when that time expired, it seems reasonable that the power to produce them would revert to the Town. We think this argument contains merit, notwithstanding the Town might have the right to purchase appellant's plant at stated intervals, for improvement in machinery and equipment may make it advantageous for the Town to build its own plant. Do not the same reasons which prevent the council, for longer than twenty years, from binding future councils on contracts for hydrant rentals and street lights also prevent it from restraining future councils as to the construction of a municipal plant? As a practical matter, an implied renewal of the restriction on building a municipal plant would compel the Town to either renew the expired contracts for hydrant rentals and street lights or to buy appellant's plant. [See Clay Center v. Clay Center Light Co., 78 Kan. 390, 97 Pac. 377.]

It is unnecessary to hold that the Town completely lacked power

**814**

to continue the restriction against erecting a municipal plant, but the argument above set forth furnishes cogent reasons why we should not restrict the governmental powers of the Town by implication.

■ Our construction of the Ordinance disposes of appellant's contention that Section 15 of Article II of the Missouri Constitution and Section 10 of Article I of the United States Constitution have been violated by the action of the Town. This, for the reason that as the town did not agree to refrain from constructing its own plant after the twenty-year period, no contract has been impaired.

■ We believe appellant is correct in its contention that the failure of the Town to exercise its purchase option prior to the end of the initial term of twenty years automatically renewed the water and light franchises. In State ex inf. McKittrick v. Springfield City Water Company, supra, we held that the council had power to grant the franchise, that is, the easement for the use of the streets by the utility in the conduct of its business, without submitting the same to the voters. Also that the franchise could be granted for any number of years. In the instant case the council, under the statutes then existing, could have granted the franchises for forty years and, in effect, it did so by making the grant for twenty years with renewal for an additional twenty years in the event the Town failed to purchase the plant. [See, also, State ex inf. v. West Missouri Power Company, 313 Mo. 283, 281 S. W. 709, and National Waterworks Company v. Kansas City, 62 Fed. 853.]

We have read, but deem it unnecessary to review in detail, the many other cases cited by the parties. Because of difference in facts or statutory or constitutional provisions, we do not regard them as authority on any issue raised herein.

■ To sum up: we hold that the decrees of the chancellor are correct in holding that the contracts for hydrant rental and street lights have terminated; and in holding that the Town should not be enjoined from contructing and operating a municipal light or water plant; but that the decrees are erroneous in holding that appellant's franchises have terminated.

Accordingly, the cases are hereby remanded with directions that the decrees be modified and entered in accordance with the conclusions herein expressed. All concur.

### OPINION OF MOTION FOR REHEARING.

CLARK, J.—Appellant's motion for rehearing vigorously assails our opinion on the following grounds: (1) that in holding that the street lighting contract is impliedly limited to a period of not to exceed twenty years by Section 12 of Article X of the Missouri Constitution, we passed upon a constitutional question not raised by the pleadings; (2) that our holding on this question is in conflict with cer-

tain previous decisions of this court; (3, 4, 5, and 6) that we erred in holding that the provision in the ordinance for renewing the franchise did not also renew the clause prohibiting the Town from constructing a municipal plant.

(1) The constitutional provision was not directly invoked by the pleadings, but it was briefed and argued at length by respondents; and appellant, without objecting that the question was not properly raised, answered the point in oral argument and in the. reply brief.

The general rule: that constitutional questions are not to be raised by the court *ex mero motu,* though not without exceptions (Ex parte Bass, 328 Mo. 195, 1. c. 200, 40 S. W. (2d) 457), will usually be adhered to by this court. But here, in construing 'the ordinance, it was necessary to determine whether the street lighting contract continued for. forty years as contended by appellant or for only twenty years. as claimed by respondents. Under such circumstances we have held it proper to consider pertinent constitutional provisions even though not mentioned in the pleadings. [Jacobs v. Cauthorn, 293 Mo. 154, 238 S. W. 154.] The question was ably and earnestly argued by both parties on the constitutional ground. Now, after an. unfavorable decision of the question, we do not think appellant is in a position to claim that the point was not properly in the case.

(2) On this point appellant cites: State ex rel. Proctor v. Walker, 193 Mo. 693, 92 S. W. 69; State ex rel. Wayne County v. Hackman, 272 Mo. 600, 199 S. W. 990; State ex rel. Johnson v. Ry., 315 Mo.' 430, 286 S. W. 360; Tate v. School Dist., 324 Mo. 477, 23 S. W. (2d) 1013; State ex rel. Emerson v. Allison, 334 Mo. 542, 66 S. W. (2d) 547; State ex rel. Hannibal v. Smith, 335 Mo. 825, 74 S. W. (2d) 367; State ex rel. Gilpin v. Smith, 339 Mo. 194, 96 S. W. (2d) 40; State ex rel. School District v. Smith, 343 Mo. 288, 121 S. W. (2d) 160; Saleno v. City of Neosho, 127 Mo. 627, 30 S. W. 190; Lamar Water & Light Co. v. Lamar, 128 Mo. 188, 26 S. W. 1025.

The. Saleno and Lamar cases were discussed in our original opinion. None of the other cases were then brought to our attention, but, after carefully reading them, we find no conflict. Indeed, insofar as they involve a similar question, they sustain the conclusions which we reached in the original opinion.

In our original opinion we held that the contract for annual payments for street lights created an indebtedness for each installment as it fell due and, as these installments exceeded the annual revenue, the council was without power under Section 12 of Article X to make such a contract for a longer period than twenty years. The appellant then argued that these installment payments did not constitute "debts" within the meaning of the Constitution, citing the Saleno and Lamar cases, supra. The only new cases cited in the motion for rehearing which remotely touch this branch of the question are:

Tate v. School Dist., supra, and State ex rel. Hannibal v. Smith, supra.· The Tate case held that a contract by a school board for the employment of a teacher did not create a debt "until such contracts have been performed." The Hannibal case, supra, held that bonds for the construction of a bridge to be paid wholly from bridge tolls did not create a "debt" within the meaning of the Constitution. It was also said that a provision for paying maintenance of the bridge out of some other fund, in the event the tolls were insufficient to pay the bonds and the maintenance, did not create a "debt" in the constitutional sense because "it may be that there will always be sufficient revenue to maintain the bridge." Neither of those cases nor any other case cited by appellant, either directly or impliedly, holds that a municipal contract which creates an annual liability in excess of annual revenue is not governed by said Section 12 of Article X of our Constitution.

The case of State ex rel. Emerson v. Allison, supra, does not touch any question involved in the instant case. It merely holds that where a taxpayer by suit delays the issuance of bonds after they are voted he cannot successfully complain because the tax was levied before the bonds were issued.

All the other cases cited by appellant on this question are cases in which refunding bonds have been issued. In those cases we have uniformly held that such refunding does not create a new debt and that a municipal debt, valid at the time contracted, is not extinguished by a failure of the municipal authorities to pay it within the constitutional limit of twenty years; and that such debt may without a vote be refunded although the refunding bonds extend more than twenty years beyond the date the original debt was contracted. We adhere to that ruling, but we have never held that a municipality could, *at the time of contracting a debt,* provide for its extension beyond twenty years either by expressly fixing the due date beyond that period or by providing for a renewal at the end of that period. On the contrary, the ruling in all these cases is based upon the condition that the initial debt must be valid in all respects, including *bona fide* compliance with said Section 12 of Article X of our Constitution. The case of State ex rel. Proctor v. Walker, supra, is the leading Missouri case on the subject. It follows an Illinois decision (Kane v. City of Charleston, 161 Ill. 179) construing a constitutional provision identical· with ours. Responding to the argument that the Constitution indicates a policy of the State that municipal indebtedness should not be created to extend beyond a period of twenty years, we quoted with approval the language of the Illinois court as follows:

"We are not disposed to dissent from that view. On the contrary, we think an intention that such a limit should be placed upon such indebtedness is sufficiently manifested by the language of the Constitution itself. Nor are we disposed to call in question the wisdom of

such provision. Evidently it is the duty, under this Constitution, of every city council, when it contracts a municipal indebtedness, to faithfully and honestly provide for the levy of the tax sufficient to pay it within twenty years.''

Our opinion does not in any manner affect our former rulings on the refunding of valid municipal indebtedness. No such question is in this case. Here the question is: Can a municipality *in the contract creating the debt* provide for its extension beyond twenty years? The Constitution seems clearly to answer that question in the negative.

(3, 4, 5 and 6) On this point appellant cites a number of decisions of this court on the power of a municipality to delegate ministerial duties. We fail to see how they throw any light on the question here involved. Appellant also cites a number of cases from other states construing leases with options to purchase, contracted between private persons. On account of difference in the wording of such leases from the ordinance here under consideration, we do not regard such cases as pertinent.

By leave an *amicus curiae* brief has been filed in support of the motion for rehearing. In this brief, in addition to points made by appellant, it is argued that the effect of our original opinion will be to invalidate many existing municipal bond issues and other contracts. This argument is based upon the assumption that our opinion means that indebtedness begins at the time bonds are authorized or a contract entered into and must be paid within twenty years from that date. We do not think the language of the opinion warrants such construction; certainly such was not intended. The Constitution requires that, ''before or at the time'' of incurring any municipal debt requiring the assent of the voters, provision shall be made for the levy of an annual tax sufficient to pay such debt ''within twenty years from the time of contracting the same.'' As to bond issues, of course, the debt is not contracted until the bonds are negotiated even though previously authorized. No contrary view is indicated by our opinion. Nor did we hold that the Town of Carrollton contracted a debt for street lighting at the time of passing Ordinance No. 347. We said ''each installment becomes a debt as it falls due.'' By the passage of the ordinance and its acceptance, the Town incurred a liability which certainly would ripen into indebtedness upon performance by the other contracting party. The Town realized this and further realized that such indebtedness, when it did arise, would exceed the annual revenue. Accordingly, at the time of incurring the liability and before it ripened into indebtedness, the Town procured authority from the voters to levy an annual tax under Section 12 of Article X of the Constitution. Counsel for both appellant and *amicus curiae*, while arguing that no ''debt'' was created within the meaning of the Constitution, concede the necessity for the voters' assent to such tax levy. This seems inconsistent to us. The

Constitution authorizes an additional tax levy for the sole purpose of paying indebtedness, and the same section which authorizes the tax levy requires that it be sufficient to pay such indebtedness within twenty years from the time of contracting the same. When Ordinance No. 347 was passed both contracting parties knew that if and when the light company complied therewith by furnishing current an indebtedness would arise, and that such indebtedness would continue to arise from year to year as such current should be furnished. But, although such indebtedness would be payable in annual installments, it would be only one indebtedness incurred under one entire mutually binding contract. The time of contracting such indebtedness would be the date when the light company should commence to furnish current.

After careful consideration of appellant's motion, we see no reason to depart from the conclusions reached in our original opinion herein. All concur.